SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

### Brian Royster v. New Jersey State Police (A-1-15) (075926)

**Argued September 12, 2016 -- Decided January 17, 2017**

**Solomon, J., writing for a majority of the Court.**

In this appeal, the Court determines whether the New Jersey State Police (NJSP), by waiting to assert the defense of sovereign immunity until a jury verdict was returned against it in a suit brought by plaintiff Brian Royster, either waived the defense through its litigation conduct or is estopped from asserting the defense of sovereign immunity.

Royster suffers from ulcerative colitis, which requires that he have immediate access to restroom facilities at his place of employment. After his return from a medical leave to treat this condition, Royster was assigned to conduct surveillance from a car. Despite Royster's repeated requests to be transferred to a position that provided access to a restroom, the NJSP kept him on surveillance duty for around seven months.

Royster filed a complaint against the NJSP. Relevant to this appeal, Royster asserted that the NJSP failed to make reasonable accommodations for his disabling medical condition in violation of the New Jersey Law Against Discrimination (LAD) and the federal Americans with Disabilities Act (ADA). In addition, Royster complained of retaliatory conduct in violation of the LAD, ADA, and New Jersey Conscientious Employee Protection Act (CEPA).

The trial court dismissed Royster's sexual harassment and state constitutional claims upon the NJSP's motion for summary judgment. The court then dismissed Royster's LAD claims as precluded by CEPA's waiver provision at the close of his case. Ultimately, only Royster's CEPA retaliation claim and ADA failure-to-accommodate claim reached the jury, which found in favor of Royster on both claims.

The NJSP then moved for judgment notwithstanding the verdict, asserting, for the first time, that the trial court lacked subject matter jurisdiction over the ADA claim because the NJSP, as an arm of the State, enjoyed sovereign immunity. Royster argued that it was fundamentally unfair to allow the NJSP to raise the sovereign immunity defense after the jury's verdict. Royster asked the court to retroactively convert the ADA claim back into a LAD claim on the ground that the claims and arguments under both statutes are identical.

The trial court denied Royster's request, but also denied the NJSP's motion for judgment notwithstanding the verdict, holding that the NJSP was "estopped from asserting lack of jurisdiction after waiting over 7 years [and] completion of the trial."

The NJSP appealed, and the Appellate Division reversed the judgment of the trial court in a published decision. The panel reasoned that, because the State's sovereignty extended to the NJSP, the defense of sovereign immunity could be raised at any time.

The Court granted Royster's petition for certification, limited to the issues of whether the NJSP was entitled to sovereign immunity on Royster's claim under the ADA and whether the NJSP waived that immunity.

**HELD**: The Court agrees with the Appellate Division that sovereign immunity precludes Royster's ADA claim. The NJSP's litigation conduct did not amount to a waiver of immunity, nor is the NJSP estopped from asserting the defense of sovereign immunity against Royster's ADA claim. However, the interests of justice require reinstatement of Royster's LAD failure-to-accommodate claim. The Court reinstates the LAD claim and remands to the trial court to mold the jury's verdict and enter judgment on Royster's LAD claim in favor of Royster and against the NJSP in the amount of $500,000.

1. Both in New Jersey and at the federal level, a state may voluntarily waive its sovereign immunity. While a clear and unequivocal expression is the hallmark of an effective waiver of sovereign immunity, the United States Supreme Court has also recognized that waiver can be premised on litigation conduct, as when a state chooses to voluntarily remove a case to federal court. Unlike their federal counterparts, New Jersey courts have never declared that the State may waive its immunity from suit in state court through its litigation conduct. (pp. 11-14)

2. The Court cannot nullify sovereign immunity for federal claims under the ADA, regardless of the State's inexplicable delay in raising the defense. Thus, because the Legislature has provided no clear and unequivocal expression of consent to be sued under the ADA, the NJSP enjoys sovereign immunity from Royster's ADA claim. The NJSP's litigation conduct did not amount to a waiver of immunity because the NJSP did not invoke the court's jurisdiction or do anything other than appear and defend against Royster's ADA claim. (pp. 14-15)

3. Neither the United States Supreme Court nor this Court has ever applied equitable estoppel to the defense of sovereign immunity. Even if equitable estoppel could be applicable to the defense of sovereign immunity, the Court would reject its application here because there was no misrepresentation of material fact by one party or unawareness of the true facts by the party seeking an estoppel. (pp. 15-16)

4. The Court next considers whether Royster's LAD failure-to-accommodate claim, which was identical to his ADA failure-to-accommodate claim, was improvidently dismissed. The Court concludes that confusion and miscommunication played a substantial role in the dismissal of the LAD failure-to-accommodate claim. (pp. 16-18)

5. The LAD statute contains a clear and unequivocal waiver of sovereign immunity because it defines employers as including "the State, any political or civil subdivision thereof, and all public officers, agencies, boards, or bodies." N.J.S.A. 10:5-5(e). Because the NJSP is precluded from asserting immunity as a defense to Royster's LAD claim, only CEPA's waiver provision could bar Royster's LAD claim here. (pp. 18-19)

6. CEPA provides that "the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law." N.J.S.A. 34:19-8. This provision does not apply to those causes of action that are substantially independent of the CEPA claim. (p. 19)

7. Here, the LAD failure-to-accommodate claim was identical to the ADA claim that survived a motion for a directed verdict. Because there was sufficient evidence to support Royster's identical ADA claim, the LAD claim should have survived the directed-verdict motion, as it was not precluded by CEPA. (pp. 19-22)

8. The Court considers the remedial nature of the LAD. While the Court does not find that the NJSP's belated assertion of sovereign immunity was made in bad faith, it concludes that the interests of justice require reinstatement of Royster's LAD failure-to-accommodate claim. The same proofs were presented to the jury to support both claims, so the Court remands to the trial court to mold the jury's award of damages on Royster's ADA claim to an award of $500,000 under the LAD—the full amount of damages awarded by the jury without application of the ADA's $300,000 cap on damages. (pp. 22-23)

**JUSTICE ALBIN, CONCURRING IN PART AND DISSENTING IN PART**, concurs in the judgment but expresses the view that the State's litigation conduct constituted a waiver of sovereign immunity. Sovereign immunity finds its source in the common law, and the common law adapts to changing circumstances to advance notions of fair play and equity. In Justice Albin's view, holding that a state's litigation conduct may constitute an exception to the doctrine of sovereign immunity would be a reasonable and fair adaptation of the common law. Accordingly, Justice Albin dissents from the majority's rejection of a litigation-conduct exception.

The judgment of the Appellate Division is **AFFIRMED AS MODIFIED**, and the matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

**JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON's opinion. JUSTICE ALBIN filed a separate, partially CONCURRING and partially DISSENTING opinion, in which CHIEF JUSTICE RABNER joins.**

BRIAN ROYSTER,

    Plaintiff-Appellant,

        v.

NEW JERSEY STATE POLICE and
JOSEPH R. FUENTES,

    Defendants-Respondents,

        and

OFFICE OF THE ATTORNEY
GENERAL, MARSHALL BROWN,
TIMOTHY GOSS, THOMAS GILBERT,
KENNETH ROWE, PATRICK REILLY,
ALAN TERPANICK, DEBORAH
EDWARDS, D.A.G., DAVID
ROSENBLUM, D.A.G., ALFRED
RAMEY, A.A.G., AUSTIN
O'MALLEY, PETER VAN
IDERSTINE, STEPHEN SERRAO,
WILLIAM LUCAS, MARSHALL
CRADDOCK, DAVID JONES, and
MARK DOYLE,

    Defendants.

        Argued September 12, 2016 – Decided January 17, 2017

        On certification to the Superior Court, Appellate Division, whose opinion is reported at 439 N.J. Super. 554 (App. Div. 2015).

        Michael J. Reimer argued the cause for appellant.

Michael C. Walters, Assistant Attorney General, argued the cause for respondents (Christopher S. Porrino, Attorney General of New Jersey, attorney; Lisa A. Puglisi, Assistant Attorney General, and Ralph R. Smith, III, of counsel, Mr. Smith, Benjamin H. Zieman, Deputy Attorney General, and Laurel B. Peltzman, on the briefs).

JUSTICE SOLOMON delivered the opinion of the Court.

In this appeal, we are called upon to determine whether the New Jersey State Police (NJSP), by waiting to assert the defense of sovereign immunity until a jury verdict was returned against it in this discrimination action, either waived through its litigation conduct or is estopped from asserting the defense of sovereign immunity.

Plaintiff Brian Royster filed a complaint against his employer, the NJSP, alleging several racial and disability discrimination claims. Plaintiff asserted that the NJSP failed to make reasonable accommodations for his disabling medical condition -- ulcerative colitis -- in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, and the federal Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12101 to 12213. In addition, plaintiff complained of retaliatory conduct in violation of the LAD, ADA, and New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14.

2

At the close of plaintiff's case, the trial court categorically dismissed all of the LAD claims as precluded by CEPA's waiver provision, N.J.S.A. 34:19-8. Following summation, the jury returned a verdict in favor of plaintiff on the remaining ADA and CEPA claims. The NJSP subsequently moved for judgment notwithstanding the verdict, invoking sovereign immunity to bar plaintiff's ADA claim. The trial court denied the motion and found that defendant was estopped from asserting sovereign immunity after the jury's verdict.

The Appellate Division reversed, holding that sovereign immunity can be raised at any time, even after a trial has concluded. The panel also rejected the notion that the NJSP was estopped from asserting or waived the defense of sovereign immunity through its litigation conduct.

We agree with the Appellate Division that sovereign immunity precludes plaintiff's ADA claim. We conclude, however, that his LAD claim for failure to provide reasonable accommodations was improvidently dismissed. As a result, we reinstate the LAD claim and remand to the trial court with instructions to mold the jury's verdict and enter judgment on plaintiff's LAD claim in favor of plaintiff and against the NJSP in the amount of $500,000.

I.

3

We distill the following pertinent facts from the trial record.

Plaintiff suffers from ulcerative colitis, which requires that he have immediate access to restroom facilities at his place of employment.  He has an extensive history of hospitalizations to treat this condition, necessitating periodic medical leave from his employment with the NJSP.

Shortly after returning from a medical leave, plaintiff was assigned to an Organized Crime Task Force, which required him to conduct surveillance from a car.  Despite plaintiff's repeated requests to be transferred to a position that provided access to a restroom, the NJSP kept him on the task force for the seven-month duration of the assignment.

In his fourth amended complaint, plaintiff alleged a continuous and systematic practice of discrimination by the NJSP.[1]  He alleged that because of his race and disabling medical condition he was subjected to demeaning remarks and punitive employment actions, including demotions, transfers, and denial of promotions.  Plaintiff asserted nine counts of hostile work

---

[1] In addition to the NJSP, plaintiff listed as defendants seventeen separately named individuals.  The Appellate Division refers to "defendants" in its opinion because the CEPA retaliation claim was also asserted against the NJSP Superintendent, Colonel Joseph Fuentes.  In this appeal, however, the NJSP is the only relevant defendant.  Therefore, when appropriate, we will use the singular, referring only to the NJSP.

environment, failure to promote, workplace retaliation, and sexual harassment. Most counts alleged some combination of violations of the LAD, ADA, CEPA, and State Constitution. In count seven of the complaint, entitled "AMERICANS WITH DISABILITIES ACT AND NJLAD," plaintiff claimed that the NJSP knew of his ulcerative colitis and failed to make a good faith effort to comply with his requests for a reasonable accommodation, which could have been achieved by simply transferring him to a position with access to a restroom.

The defendants collectively moved for summary judgment. In a fifty-one-page opinion, the trial court dismissed plaintiff's sexual harassment and state constitutional claims against various defendants, but preserved the claims against the NJSP. The following seven claims remained: "LAD: hostile work environment; LAD: discrimination in promotions; LAD: retaliation; CEPA: retaliation; failure to accommodate under ADA and LAD; ADA: hostile work environment; [and] ADA retaliation." The case proceeded to trial.

At the close of plaintiff's case, defendants moved for a directed verdict, asserting that plaintiff had not presented prima facie evidence of any of his remaining employment discrimination claims. To resolve the motion, it was necessary for the trial court to consider CEPA's preclusion of any other "causes of action that require a finding of retaliatory conduct

that [would be] actionable under CEPA." Young v. Schering Corp., 141 N.J. 16, 29 (1995); see also N.J.S.A. 34:19-8 (requiring a plaintiff to waive "the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law"). Accordingly, the trial court reviewed the "conduct the plaintiff [wa]s relying on for the CEPA [retaliation] claim, so [it] could carve that out from the LAD [retaliation] claim and the ADA [retaliation] claim."

The trial court began by evaluating the race-based CEPA and LAD retaliation claims. The CEPA claim was supported by plaintiff's allegation that he was passed over for a promotion because he "blew the whistle" on the Equal Employment Opportunity/Affirmative Action (EEO/AA) Unit for failing to timely investigate certain matters. Plaintiff's attorney admitted that CEPA, at that juncture, was at "the heart of plaintiff's claim." In response, the court inquired whether all of the facts regarding promotions were relevant only to the CEPA claim.

Referencing a low evaluation rating, a demotion, and that a white male received a promotion for which plaintiff qualified, plaintiff's counsel represented that the LAD claims were premised on facts distinct from the whistleblowing activity with the EEO/AA Unit. The trial court, however, was not persuaded:

6

it ruled that a prima facie case had not been established for the LAD retaliation, LAD discrimination-in-promotions, or LAD hostile-work-environment claims.  The court reasoned that the only facts that could support a LAD retaliation or discrimination-in-promotions claim already supported the CEPA retaliation claim.

The trial court, therefore, dismissed the LAD retaliation and discrimination-in-promotions claims as precluded by CEPA's waiver provision, ostensibly leaving the following claims:  CEPA retaliation, failure to accommodate under the LAD and ADA, ADA hostile work environment, and ADA retaliation.  However, the following exchange then occurred:

> THE COURT:  Is there anything further on the Law Against Discrimination?   That's it. Right?
>
> [PLAINTIFF'S ATTORNEY]:  Yes.
>
> THE COURT:  Now are you making a motion to dismiss on ADA grounds other than the --
>
> [DEFENSE ATTORNEY]:  Yes.  Are all the LAD claims gone, Your Honor, retaliation?
>
> THE COURT:  That's all I had, is there any other?  That's all dismissed.
>
> [DEFENSE ATTORNEY]:  And you asked me about the ADA.

It appears from this colloquy that the LAD failure-to-accommodate claim was also dismissed, even though its factual basis had not been discussed.  Indeed, even the ADA claims

7

involving discrimination on the basis of plaintiff's disability were only briefly mentioned by plaintiff's counsel to advise the court that, unlike CEPA, the ADA did not have a waiver provision:

> THE COURT: Yes, well you're saying that the CEPA and ADA can overlap?
>
> [PLAINTIFF'S ATTORNEY]: There's nothing in ADA that would suggest otherwise. As a matter of fact it talks about the ADA charges[;] it talks about retaliation.
>
> THE COURT: Well LAD also talks about retaliation.

Ultimately, only two of plaintiff's claims against the NJSP survived and were considered by the jury -- the CEPA retaliation claim and the ADA failure-to-accommodate claim. On both, the jury returned a verdict in favor of plaintiff. The jury awarded him $500,000 in damages for defendant's failure to accommodate under the ADA, which the judge capped at $300,000, pursuant to 42 U.S.C.A. § 1981a(b)(3)(D).

Following the jury's decision, defendant moved for judgment notwithstanding the verdict. It asserted, for the first time, that the trial court lacked subject matter jurisdiction over the ADA claim because the NJSP, as an arm of the State, enjoyed sovereign immunity.

Counsel for plaintiff argued that it was fundamentally unfair to allow defendant to raise the sovereign immunity

8

defense after the jury's verdict.  Although plaintiff's counsel could not point to any legal precedent supporting reinstatement of a voluntarily dismissed claim, he asked the court to retroactively convert the ADA claim back into a LAD claim. Counsel argued, "No facts would have changed, no argument would have changed, no issue would have changed, no testimony would have changed, no charge would have changed.  Nothing at all would have changed except the letters ADA to LAD on the jury instruction sheet."

The trial court denied counsel's request, but also denied defendant's motion for judgment notwithstanding the verdict, holding that defendant was "estopped from asserting lack of jurisdiction after waiting over 7 years [and] completion of the trial."[2]  Defendant appealed.

The Appellate Division reversed the trial court and held "that the doctrine of state sovereign immunity precludes plaintiff's ADA claim, even though defendant[] did not fully raise that argument until [its] motion for a judgment notwithstanding the verdict . . . ."[3]  Royster v. N.J. State

---

[2] Plaintiff filed his first complaint in this matter in September 2005.  Thus, by the time the trial concluded, approximately seven years had passed.

[3] The panel also held that, "[a]lthough plaintiff established a prima facie CEPA claim, the CEPA verdict is so fatally flawed that the judgment must be vacated and the matter remanded for a new trial on all issues related to plaintiff's CEPA claim."

Police, 439 N.J. Super. 554, 561 (App. Div. 2015).  The panel reasoned that, because the State's sovereignty extended to the NJSP, the defense of sovereign immunity could be raised at any time during the proceedings.  Id. at 570-72.

We granted plaintiff's petition for certification, limited to the issues of whether defendant was entitled to sovereign immunity on plaintiff's claim under the ADA and whether defendant waived that immunity.  Royster v. N.J. State Police, 223 N.J. 161 (2015).

II.

In seeking reversal of the Appellate Division's decision, plaintiff does not dispute that the NJSP is an arm of the State for purposes of sovereign immunity.  Rather, plaintiff argues that the Legislature's waiver of sovereign immunity under the LAD statute was an implicit waiver of sovereign immunity under the ADA.  Plaintiff further contends that the NJSP waived its immunity in this case through its litigation conduct -- specifically by submitting the ADA claim to the jury.  In addition, plaintiff maintains that defendant is estopped from asserting sovereign immunity because it gained a significant and unfair litigation advantage by failing to raise the defense

---

Royster v. N.J. State Police, 439 N.J. Super. 554, 577 (App. Div. 2015).  That holding is not part of this appeal.

until after the trial concluded, obviating the jury's award of damages on his ADA failure-to-accommodate claim.

Plaintiff also posits that the LAD failure-to-accommodate claim was improperly dismissed as precluded by the CEPA retaliation claim because the facts supporting the former are separate and distinct from those supporting the latter. Therefore, plaintiff contends that he would have pursued the LAD failure-to-accommodate claim had he known that defendant would assert sovereign immunity. Plaintiff urges this Court to reinstate the claim because the ADA and the LAD failure-to-accommodate claims are identical and implicate the same facts.

Defendant emphasizes that only the State may define the extent of its own sovereign immunity. Defendant also stresses that sovereign immunity is a well-established defense to ADA claims in federal courts, and that plaintiff could have pursued both the LAD and ADA claims for failure to provide reasonable accommodations. Defendant argues that, even if the doctrine of estoppel is applied to the State, it should not be estopped here from raising the defense of sovereign immunity because plaintiff voluntarily dismissed his LAD claim.

III.

Defendants' motion for judgment notwithstanding the verdict raises a question of law -- the applicability of sovereign immunity -- that we review de novo. Raspa v. Office of Sheriff

11

of Cty. of Gloucester, 191 N.J. 323, 334-35 (2007).  Thus, the Appellate Division's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Ibid. (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

### A.

We begin our review by examining sovereign immunity jurisprudence and how the sovereign immunity defense may be waived through the State's litigation conduct.

"[A]s the Constitution's structure, and its history, and the authoritative interpretations by [the United States Supreme] Court make clear, the States' immunity from suit is a fundamental aspect of the[ir] sovereignty . . . ."[4]  Alden v. Maine, 527 U.S. 706, 713, 119 S. Ct. 2240, 2246, 144 L. Ed. 2d 636, 652 (1999).  New Jersey has "long recognized that an essential and fundamental aspect of sovereignty is freedom from suit by private citizens for money judgments absent the State's consent."  Allen v. Fauver, 167 N.J. 69, 73-74 (2001).

Both in New Jersey and at the federal level, a state may voluntarily waive its sovereign immunity.  Coll. Sav. Bank v.

---

[4] This has "sometimes [been] referred to . . . as 'Eleventh Amendment immunity.'"  Alden v. Maine, 527 U.S. 706, 713, 119 S. Ct. 2240, 2246, 144 L. Ed. 2d 636, 652 (1999).  However, sovereign immunity is "neither derive[d] from nor is limited by the terms of the Eleventh Amendment."  Ibid.

12

Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670, 119 S. Ct. 2219, 2223, 144 L. Ed. 2d 605, 613 (1999); Allen, supra, 167 N.J. at 74. An effective waiver requires "a clear and unequivocal statement of the Legislature." Allen, supra, 167 N.J. at 77. For example, New Jersey has expressly waived sovereign immunity for claims brought under the LAD. See N.J.S.A. 10:5-5(e) (defining "[e]mployer" to include "the State, any political or civil subdivision thereof, and all public officers, agencies, boards, or bodies"). However, the United States Supreme Court held that Congress's attempt to abrogate state sovereign immunity under Title I of the ADA was unconstitutional. Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 368, 374, 121 S. Ct. 955, 964-65, 967-68, 148 L. Ed. 2d 866, 880, 883-84 (2001).

While a clear and unequivocal expression is the hallmark of an effective waiver of sovereign immunity, the United States Supreme Court has also recognized that waiver can be premised on litigation conduct. Lapides v. Bd. of Regents, 535 U.S. 613, 624, 122 S. Ct. 1640, 1646, 152 L. Ed. 2d 806, 816 (2002). In Lapides, the Court determined that when a state is involuntarily brought into litigation in state court, it can choose to voluntarily remove the case to federal court, thereby consenting to the federal court's jurisdiction and waiving immunity from suit by its litigation conduct. Id. at 619, 122 S. Ct. at 1643,

152 L. Ed. 2d at 813 (citing Clark v. Barnard, 108 U.S. 436, 447, 2 S. Ct. 878, 883, 27 L. Ed. 780, 784 (1883) (holding that a state's "voluntary appearance" in federal court as an intervenor avoids Eleventh Amendment inquiry)). Those "purposeful[] requests [for] a federal forum . . . express[] a clear intent to waive immunity from suit." Lombardo v. Pennsylvania, 540 F.3d 190, 197 (3d Cir. 2008). Unlike their federal counterparts, New Jersey courts have never declared that the State may waive its immunity from suit in state court through its litigation conduct.

Here, the Appellate Division found that defendant did not waive immunity through its litigation conduct because defendant "did not seek a removal from state court to federal court, or do anything other than appear and defend against plaintiff's ADA claim." Royster, supra, 439 N.J. Super at 572-73. We agree.

We cannot nullify sovereign immunity for federal claims under the ADA, regardless of the State's inexplicable delay in raising the defense. We agree with the Appellate Division, and the parties do not dispute, that the NJSP is an arm of the State under Fitchik v. New Jersey Transit Rail Operations, 873 F.2d 655, 659 (3d Cir.) (en banc), cert. denied, 493 U.S. 850, 110 S. Ct. 148, 107 L. Ed. 2d 107 (1989). Thus, because our Legislature has provided no clear and unequivocal expression of

14

consent to be sued under the ADA, defendant enjoys sovereign immunity from plaintiff's ADA claim.

Additionally, we find that defendant's litigation conduct did not amount to a waiver of immunity because defendant did not invoke the court's jurisdiction or do anything other than appear and defend against plaintiff's ADA claim. That is not the kind of purposeful conduct that is consistent with waiving the defense of sovereign immunity.

B.

Plaintiff also argues that defendant's belated assertion of immunity resulted in an unfair litigation advantage and that the NJSP should thus be estopped from asserting the defense of sovereign immunity after the jury's verdict.

We note, first, that equitable estoppel is a doctrine used to prevent manifest injustice, but is "rarely invoked against a governmental entity." McDade v. Siazon, 208 N.J. 463, 480 (2011) (quoting County of Morris v. Fauver, 153 N.J. 80, 104 (1998)). Further, neither the United States Supreme Court nor this Court has ever applied equitable estoppel to the defense of sovereign immunity.

Even if equitable estoppel could be applicable to the defense of sovereign immunity, we would reject its application here. "[E]ssential to a finding of estoppel is a misrepresentation of material fact by one party and an

15

unawareness of the true facts by the party seeking an estoppel."
In re Johnson, 215 N.J. 366, 379 (2013) (quoting Horsemen's
Benevolent & Protective Ass'n, N.J. Div. v. Atl. City Racing
Ass'n, 98 N.J. 445, 456 (1985)).  Here, plaintiff was always
aware that defendant was an arm of the State, and defendant
never represented otherwise.  Moreover, defendant did not
affirmatively represent that it had decided to waive its
immunity by simply defending the claims against it.

As a result, we conclude, as did the Appellate Division,
that defendant should not be estopped from asserting the defense
of sovereign immunity against plaintiff's ADA claim.

IV.

A.

We next consider whether plaintiff's LAD failure-to-
accommodate claim, which was identical to his ADA failure-to-
accommodate claim, was improvidently dismissed.  In addressing
this question, we briefly review the procedural posture of this
claim.

Plaintiff's LAD failure-to-accommodate claim accompanied
his parallel ADA claim.  As the trial judge stated, plaintiff's
fourth amended complaint was "not a model of clarity."
Nonetheless, count seven, entitled "AMERICANS WITH DISBILITIES
ACT AND NJLAD," was narrowly focused.  This count involved
plaintiff's transfer to a surveillance unit and, despite his

16

repeated requests, the NJSP's failure to accommodate his disabling medical condition by transferring him to a position with restroom access.

Acknowledging that this claim implicated one set of facts but two distinct statutes, the trial court's summary judgment opinion observed that a prima facie case for failure to accommodate under both the ADA and LAD was identical. Notably, in assessing the liability of each defendant, the judge conducted one analysis under both statutes for "[f]ailure to accommodate." However, when defendant moved for a directed verdict, the trial court separated the claims by statute: the "Failure to Accommodate ADA and LAD" claim became an ADA failure-to-accommodate claim and a LAD failure-to-accommodate claim.

The trial court then applied CEPA's waiver provision to the CEPA retaliation, LAD retaliation, and LAD discrimination-in-promotions claims. The CEPA claim involved plaintiff's allegation that he was passed over for a promotion because he complained that the EEO/AA Unit failed to timely investigate certain matters. The LAD failure-to-accommodate claim involved plaintiff's transfer to a surveillance unit and, despite his repeated requests, the NJSP's failure to accommodate his disabling medical condition by transferring him to a position with restroom access. Nevertheless, the judge concluded that

17

plaintiff had not established the additional facts necessary to show that the LAD claims were separate and distinct from the CEPA retaliation claim.

The judge and the parties appear to have overlooked the claims based on disability discrimination, i.e., failure to accommodate under the ADA and LAD, ADA retaliation, and ADA hostile-work-environment claims. Without discussing any facts related to disability discrimination, the judge mistakenly dismissed the LAD failure-to-accommodate claim. "[B]ecause, in the end, this record is a poor vehicle in which to find the definitive answer" as to what exactly happened, Victor v. State, 203 N.J. 383, 422 (2010), we can conclude only that confusion and miscommunication played a substantial role in the dismissal of the LAD failure-to-accommodate claim.

B.

It is against this procedural backdrop that we analyze whether plaintiff's LAD failure-to-accommodate claim was properly dismissed. We note that the LAD statute contains a clear and unequivocal waiver of sovereign immunity because it defines employers as including "the State, any political or civil subdivision thereof, and all public officers, agencies, boards, or bodies." N.J.S.A. 10:5-5(e). Because defendant is precluded from asserting immunity as a defense to plaintiff's

18

LAD claim, only CEPA's waiver provision could bar plaintiff's LAD claim here.

The CEPA waiver provision states:

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; <u>except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law</u>.

[<u>N.J.S.A.</u> 34:19-8 (emphasis added).]

This "provision applies only to those causes of action that require a finding of retaliatory conduct that is actionable under CEPA. The waiver exception does not apply to those causes of action that are substantially independent of the CEPA claim." <u>Young</u>, <u>supra</u>, 141 <u>N.J.</u> at 29. The dismissed LAD claim at issue was premised on the failure of the NJSP to accommodate plaintiff's ulcerative colitis, not retaliation; thus, CEPA's waiver provision was not a bar.

The LAD failure-to-accommodate claim was identical to the ADA claim that survived a motion for a directed verdict. As plaintiff's attorney argued below in response to defendant's motion for judgment notwithstanding the verdict, "[n]o facts would have changed, no argument would have changed, no issue would have changed, no testimony would have changed, no charge

19

would have changed.  Nothing at all would have changed except the letters ADA to LAD on the jury instruction sheet."  We agree.

The trial judge instructed the jury that, under the ADA, plaintiff had to prove five elements:  (1) he had a disability within the meaning of the ADA; (2) he was a qualified individual able to perform the essential functions of his job assignments; (3) defendant was informed of the need for an accommodation due to his disability; (4) providing the accommodation would have been reasonable; and (5) defendant failed to provide the accommodation of access to a restroom during work.

Although the LAD statute does not specifically address failure to accommodate, "our courts have uniformly held that the [LAD] nevertheless requires an employer to reasonably accommodate an employee's handicap."  Potente v. County of Hudson, 187 N.J. 103, 110 (2006) (quoting Tynan v. Vicinage 13 of Superior Court, 351 N.J. Super. 385, 396 (App. Div. 2002)).  As the trial judge acknowledged in her summary judgment opinion, "[t]he requirements for failure to accommodate claims under New Jersey's LAD have been interpreted in accordance with the Americans with Disabilities Act."  (Quoting Armstrong v.

20

<u>Burdette Tomlin Mem'l Hosp.</u>, 438 <u>F.</u>3d 240, 246, n.12 (3d Cir. 2006)).[5]

To establish a failure-to-accommodate claim under the LAD, a plaintiff must demonstrate that he or she (1) "qualifies as an individual with a disability, or [] is perceived as having a disability, as that has been defined by statute"; (2) "is qualified to perform the essential functions of the job, or was performing those essential functions, either with or without reasonable accommodations"; and (3) that defendant "failed to reasonably accommodate [his or her] disabilities." <u>Victor</u>, <u>supra</u>, 203 <u>N.J.</u> at 410, 421. Although these elements do not mirror those of the ADA, the same proofs are implicated: (1) the plaintiff had a disability; (2) the plaintiff was able to perform the essential functions of the job; (3) the employer was aware of the basic need for an accommodation; and (4) the employer failed to provide a reasonable accommodation.

We reiterate that the ADA failure-to-accommodate claim survived defendant's motion for a directed verdict. Because there was sufficient evidence to support plaintiff's identical

---

[5] We note that the ADA is a more constrictive statute than the LAD, as it requires an additional showing that the plaintiff's disability limits a major life activity. 42 <u>U.S.C.A.</u> § 12102(1)(A). The LAD's definition of physical disability is broader. <u>See</u> <u>Viscik v. Fowler Equip. Co.</u>, 173 <u>N.J.</u> 1, 16 (2002) (concluding that unlike ADA, disability under LAD need not be "severe" or "immutable").

ADA claim, the LAD claim should have survived the directed-verdict motion, as it was not precluded by CEPA.

V.

The Legislature, "[i]n justifying the LAD's enactment," declared "abhorrence to [workplace] discrimination in this state." Rodriguez v. Raymours Furniture Co., 225 N.J. 343, 355 (2016). Both the LAD and ADA were enacted to protect the rights of those with disabilities, and to enable them to vindicate those rights in court. "The LAD plays a uniquely important role in fulfilling the public imperative of eradicating discrimination." Id. at 347. Like CEPA, one purpose of the LAD "is to make it easier, not harder, for an employee to prevail" on an employment discrimination claim. Young, supra, 141 N.J. at 26 (describing the remedial nature of CEPA). We have held that remedial social legislation such as the LAD "should be given liberal construction in order that its beneficent purposes may be accomplished." Estate of Kotsovska ex rel. Kotsovska v. Liebman, 221 N.J. 568, 584 (2015) (quoting Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 42 (2008)); see also Young, supra, 141 N.J. at 25 ("Where the Legislature's intent is remedial, a court should construe a statute liberally."). These principles guide us to our conclusion here.

Plaintiff maintains that had he known the ADA claim was barred, he would have permissibly brought his claim for failure

to provide reasonable accommodations under the LAD.  We acknowledge that plaintiff acquiesced to dismissal of the LAD failure-to-accommodate claim, which was not precluded by sovereign immunity.  However, we cannot ignore that the dismissal was mistaken.

While we do not find that defendant's belated assertion of sovereign immunity was made in bad faith, we conclude that the interests of justice require reinstatement of plaintiff's LAD failure-to-accommodate claim.  See State v. Johnson, 42 N.J. 146, 162 (1964) (holding that trial court's findings should be disturbed only if they are so clearly mistaken "that the interests of justice demand intervention and correction").

As outlined above, the same proofs were presented to the jury to support both the ADA and LAD failure-to-accommodate claims.  Because the jury awarded plaintiff $500,000 under the ADA for defendant's failure to accommodate, we conclude the jury would have given plaintiff the same $500,000 award had plaintiff's LAD failure-to-accommodate claim not been dismissed.

To remain consistent with the spirit of the LAD, we remand to the trial court to mold the jury's award of damages on plaintiff's ADA claim to an award of $500,000 under the LAD –– the full amount of damages awarded by the jury without application of the ADA's $300,000 cap on damages.

VI.

The judgment of the Appellate Division is affirmed as modified, and this matter is remanded to the trial court for further proceedings consistent with this opinion.


JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON's opinion. JUSTICE ALBIN filed a separate, partially CONCURRING and partially DISSENTING opinion, in which CHIEF JUSTICE RABNER joins.

BRIAN ROYSTER,

    Plaintiff-Appellant,

        v.

NEW JERSEY STATE POLICE and
JOSEPH R. FUENTES,

    Defendants-Respondents,


JUSTICE ALBIN concurring in part and dissenting in part.

The majority has come to an eminently equitable outcome by (1) recognizing that the failure-to-accommodate claims under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, and the federal Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12101-12213, are virtually the same; (2) reviving the LAD claim erroneously dismissed by the trial court and substituting it for the ADA claim that the majority now dismisses on the ground of sovereign immunity; and (3) upholding the jury's verdict and molding the damages award. Although the majority has taken a circuitous route to arrive at a just result, it nevertheless reached the right destination, and therefore I concur in the judgment.

I would have taken a more direct path and upheld the jury's verdict and award on the ADA claim, finding that, on that claim,

1

the State's litigation conduct constituted a waiver of sovereign immunity. The State litigated the ADA claim over seven years at great expense to plaintiff and the civil justice system. Not until after the trial court erroneously dismissed the LAD claim and after the jury returned a verdict in plaintiff's favor on the ADA claim did the State assert sovereign immunity. Had the State moved earlier for dismissal of the ADA claim, the slumbering plaintiff undoubtedly would have awakened and demanded that he be permitted to prosecute the LAD failure-to-accommodate claim.

The majority treats sovereign immunity as though it is an immutable doctrine, but it is not. Sovereign immunity finds its source in the common law, and the common law adapts to changing circumstances to advance notions of fair play and equity. Recognizing that the State can waive sovereign immunity through its litigation conduct is not a novel notion. In Lapides v. Board of Regents, 535 U.S. 613, 624, 122 S. Ct. 1640, 1646, 152 L. Ed. 2d 806, 816 (2002), the United States Supreme Court found that the State of Georgia waived its immunity from suit under the Eleventh Amendment as the result of its litigation conduct. This Court is the final expositor of the common law. Holding that a state's litigation conduct may constitute an exception to the doctrine of sovereign immunity would be a reasonable and fair adaptation of the common law. Accordingly, although I

2

concur in the judgment, I dissent from the majority's rejection of a litigation-conduct exception to the doctrine of sovereign immunity.

## I.

The State had a rational basis for not moving to dismiss the ADA failure-to-accommodate claim while the LAD failure-to-accommodate claim was still in the case. Although the two claims are virtually identical, the ADA claim -- unlike the LAD claim -- is subject to a cap on damages. If both claims had gone to the jury and, for some reason, the jury had returned a no-cause verdict on the LAD claim, the State would have benefitted from the damages cap. Had the State moved for dismissal of the ADA claim before trial, it is highly unlikely that plaintiff would have slept on his rights and acquiesced in the dismissal of his LAD claim. Accordingly, the course taken by the State was not an unreasonable litigation strategy.

It is another thing, however, for this Court to allow the State, which defended the ADA claim for seven years, to assert sovereign immunity to overthrow a jury verdict, notwithstanding its litigation conduct.

## II.

Sovereign immunity is a doctrine based on the ancient maxim that the king can do no wrong. State v. Otis Elevator Co., 12 N.J. 1, 13 (1953). The doctrine is a "judge-made concept," a

3

product of the common law, City of East Orange v. Palmer, 47 N.J. 307, 328 (1966), abrogated in part by N.J.S.A. 54:4-3.3(b), and, therefore, like all common-law doctrines, sovereign immunity may be adapted to reflect changing "notions of fairness and justice," see Hennessey v. Coastal Eagle Point Oil Co., 129 N.J. 81, 110 (1992).  "At the earliest common law the doctrine of 'sovereign immunity' . . . was a rule that allowed substantial relief," but as the doctrine was ushered into the modern era it "produce[d] . . . harsh results."  Palmer, supra, 47 N.J. at 328 (1966) (quoting Muskopf v. Corning Hosp. Dist., 359 P.2d 457, 458 (Cal. 1961), superseded by statute, Cal. Gov't Code §§ 810-895.8).  As a result, "tolerance for the doctrine of sovereign immunity eroded" over time.  Allen v. Fauver, 167 N.J. 69, 74 (2001).

As the superintendent of the common law, this Court in 1970 abrogated sovereign immunity as it applied both to contractual and tort actions against the State.  P, T & L Constr. Co. v. Comm'r, Dep't of Transp., 55 N.J. 341, 346 (1970) (contractual cases), superseded by statute, N.J.S.A. 59:13-1 to -10; Willis v. Dep't of Conservation & Econ. Dev., 55 N.J. 534, 540 (1970) (tort cases), superseded by statute, N.J.S.A. 59:1-1 to 59:12-3. Those decisions make clear that the doctrine of sovereign immunity is not holy writ but a product of our evolving common law.  The Legislature may preempt the common law through its

4

statutory powers, as it did in the wake of P, T & L and Willis, by passing the Contractual Liability Act, N.J.S.A. 59:13-1 to -10, and the Tort Claims Act, N.J.S.A. 59:1-1 to 59:12-3, and as it has in other areas, see, e.g., N.J.S.A. 2A:35-1 (replacing common-law action of ejectment and providing statutory remedy to one who claims title to property possessed by another).

In the absence of legislative action occupying the field, however, this Court retains its authority as the ultimate expositor of the common law to ensure that the sovereign-immunity doctrine is not wielded as an instrument of injustice. This Court is not powerless and is not required to sit as a silent witness after the State litigates a matter over a course of seven years and asserts sovereign immunity only after an unfavorable jury verdict. This is especially so when the opposing party detrimentally relies on the State's conduct.

Under such circumstances, common-sense notions of fairness dictate that this Court should recognize a litigation-conduct exception to sovereign immunity. This Court should follow the lead of the United States Supreme Court, which, in Lapides, supra, held that a state's litigation conduct can constitute a waiver of Eleventh Amendment immunity. 535 U.S. at 624, 122 S. Ct. at 1646, 152 L. Ed. 2d at 816.

In Lapides, the plaintiff filed federal-civil-rights and state-law claims against certain Georgia state officials in a

5

Georgia state court.  Id. at 616, 122 S. Ct. at 1642, 152 L. Ed. 2d at 811.  There was no question that, through its tort-claims act, Georgia had waived sovereign immunity on the state-law claims.  Ibid.  Georgia's attorney general removed the lawsuit to federal court.  Ibid.  After succeeding in having the federal-civil-rights claims dismissed on qualified-immunity grounds, Georgia argued that it was immune from suit on the state-law claims based on Eleventh Amendment immunity.  Ibid. Even though Georgia could not be sued in federal court for money damages under the strict language of the Eleventh Amendment, the Supreme Court held that Georgia's litigation conduct -- its removal of the case to federal court -- constituted a waiver of its Eleventh Amendment immunity.  Id. at 617, 624, 122 S. Ct. at 1643, 1646, 152 L. Ed. 2d at 812, 816.  That piercing of Eleventh Amendment immunity was necessary to ensure that Georgia, through its litigation conduct, did not deny the plaintiff a forum where he could redress his state-law claims. Id. at 621-23, 122 S. Ct. at 1644-45, 152 L. Ed. 2d at 814-15.

Surely, if a state can waive Eleventh Amendment immunity -- an immunity grounded in the text of the Federal Constitution -- a state can waive the common-law doctrine of sovereign immunity. See Sea Hawk Seafoods, Inc. v. State, 215 P.3d 333, 334, 341 (Alaska 2009) (holding that state can waive sovereign immunity through litigation conduct).

6

Our decision in Allen v. Fauver is not controlling law because in that case the State's litigation conduct was not an issue. In Allen, supra, the State timely moved to dismiss, on sovereign-immunity grounds, claims filed by state correctional officers under the Fair Labor Standards Act (FLSA), 29 U.S.C.A. §§ 201-219. 167 N.J. at 72. We upheld the dismissal of the claims because the Legislature did not indicate by "a clear and unequivocal statement" that it intended to waive sovereign immunity on FLSA claims brought against the State. Id. at 77.

In the present case, the State would have been entitled to dismissal of the federal ADA claim had it timely asserted sovereign immunity, just as the State had done in Allen. Unlike here, the State in Allen did not pursue a litigation strategy of defending on the federal claims over the course of many years to the detrimental reliance of the plaintiffs.

Recognizing a litigation-conduct exception to sovereign immunity would not impose any hardship on the State. The State merely would have to move timely to dismiss a lawsuit on sovereign-immunity grounds. That presumably would save the time and resources of the State, the plaintiff, and the court system. Thus, it should be evident that a litigation-conduct exception would result in manifold benefits and advance a sensible public policy.

III.

In conclusion, I dissent because, by declining to adopt a litigation-conduct exception to the doctrine of sovereign immunity, the majority has not assumed its rightful supervisory role over the common law.  I concur because the majority has fashioned a remedy in this case that achieves a just outcome.