**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1490-24

MARY JO REID,

    Plaintiff-Appellant,

v.

SUMMIT BOARD OF EDUCATION,
ROBERT GARDELLA, individually and
in his official capacity as Human
Resources Director, and DOREEN
BABIS, individually and in her capacity
as Director of Special Education Services,

    Defendants-Respondents.

_____

Submitted March 4, 2026 – Decided April 2, 2026

Before Judges Currier and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2316-21.

Goldman Davis Krumholz & Dillon PC, attorneys for appellant (Evan L. Goldman and Kristen Ragon, on the brief).

Methfessel & Werbel, attorneys for respondent (Eric L. Harrison, on the brief).

PER CURIAM

Plaintiff Mary Jo Reid appeals from the trial court's order granting summary judgment to defendants Summit Board of Education, Robert Gardella, and Doreen Babis and dismissing her claims of disability discrimination, retaliation, and a hostile work environment pursuant to the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50. We affirm.

I.

Plaintiff worked for the Summit Board of Education (Board) for eight years as a Board-Certified Behavioral Analyst. Plaintiff's role encompassed frequent interaction with special needs children, including physical intervention during strenuous behavioral episodes. In July 2020, during the Covid-19 pandemic, the Board informed all employees of its plan to resume in-person learning at the start of the 2020-21 school year. Gardella, as the Board's Human Resources Director, sent a letter to employees providing additional details regarding accommodations and avenues to take medical leave if necessary. In the letter, Gardella stated that fully remote work requests were unlikely to be granted to maintain a full staff for students.

Plaintiff alleged she suffered with respiratory conditions that made her susceptible to severe illness if exposed to the virus. Therefore she submitted a

A-1490-24

request, supported by her doctors, seeking to continue full remote work.  The

Board was initially reluctant but eventually offered plaintiff several other viable

accommodations.  Defendants' letter spelled out the accommodations in detail,

stating

- [She is] approved to conduct the majority of [her] work remotely, but from an office on-site. [She] will, however, be required to engage with others in the event that a situation arises that; a) falls within [her] professional duties, <u>and</u> (b) requires [her] intervention because a student is in distress and/or a staff member requires [her] in-person professional support.
- 6[-]foot spacing between students.  Where this is not possible, we will provide acrylic dividers.
- An adult face shield will be provided.
- An N95 mask can be provided upon request.
- [Her] students will be temperature checked on-site daily.
- We are exploring a camera in classrooms so that [she] can observe from an on-site, remote location.

Plaintiff continued to request to work remotely.  After she submitted additional

information from her doctors, the Board granted her request to work remotely

as the school year began.

In October 2020, eight school-related incidents ensued, requiring staff to

physically intervene with students suffering from behavioral challenges.

Because plaintiff was working, but not physically present in the school, other

A-1490-24

school staff members were forced to intervene, leaving their classrooms unattended. On October 29, 2020, Gardella emailed plaintiff, informing her of the need to restart return-to-work discussions given the escalating need for in-person services. After meeting with plaintiff, Gardella formally withdrew the remote work accommodation on November 11, 2020, citing the needs of the staff and students and finding that she was incapable of performing the essential functions of her job remotely. In the withdrawal notice, Gardella expressly stated that his decision was not based on her skills or professionalism.

Plaintiff urged defendants to reconsider, noting the risk posed to her husband, who was undergoing cancer treatment, if she contracted the virus. Defendants rescinded plaintiff's full accommodation but offered the same accommodations available to plaintiff at the beginning of the school year. Plaintiff then retained counsel. She began taking unauthorized sick time off work, amounting to 36.5 days of being absent without leave. During this time, defendants advised plaintiff and her attorney that her time off was unauthorized absent any formal request for medical leave or medical documentation to justify it.

On January 11, 2021, plaintiff wrote to Babis, the Board's Director of Special Education Services, relaying concerns from her treating pulmonologist

4

regarding her condition, as well as her husband's, and the risks of exposure. In the letter, plaintiff sought to complete the last two days of her work week in remote status, with medical leave commencing at the start of the following week. Defendants sought authorization to grant the two days of remote work but did not receive approval before plaintiff elected to work remotely on those days anyway. Defendants informed plaintiff that her election to do so could result in disciplinary action.

Plaintiff began her medical leave on January 19, 2021, without submitting any formal application for leave or receiving approval. On January 20, 2021, Gardella issued plaintiff a formal letter of reprimand for the several unauthorized days taken off between December 2020 and January 2021. Plaintiff was informed of the risk of disciplinary action, including termination, and reminded that she had not applied for any form of medical leave and was therefore not granted any time off. Later that same day, however, Gardella informed plaintiff that he received a letter from her attorney with an enclosed application for medical leave under the New Jersey Family Leave Act, N.J.S.A. 34:11B-1 to -34:11B-16, but advised plaintiff this form of leave did not authorize leave pertaining to her own health. Gardella instructed her that she

must apply for leave through another avenue, such as the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654.

On February 9, 2021, plaintiff wrote to defendants informing them of her plan to retire, effective March 1, 2021. Defendants responded, insisting plaintiff postpone her retirement to provide for the requisite sixty days' notice. Plaintiff postponed her retirement to May 1, 2021, and requested continued paid disability leave up until that date. Defendants reminded plaintiff she had not applied for paid disability leave, and therefore none was granted. Defendants instructed plaintiff to return to work on March 12, 2021, in person and with all previously offered accommodations. The Board advised plaintiff that if she did not return at that time, they would consider her position abandoned. Plaintiff failed to report for work on March 12, 2021, and was terminated.

On March 26, 2021, plaintiff wrote the Board arguing she was never absent without leave but was forced into a constructive discharge. In the letter, plaintiff claimed she was discriminated against for her disability and retaliated against for asserting her rights. Enclosed with the letter was a certification from plaintiff's doctor requesting FMLA leave from January 19, 2021, to May 1, 2021. However, the certification was not signed by plaintiff's physician until March 18, 2021, days after her position was deemed abandoned and she was

6

terminated. This was the first application and certification that plaintiff properly served on the Board for leave, despite months of ongoing communication regarding same.

On July 2, 2021, plaintiff sued defendants alleging violations of the LAD, including disability discrimination, retaliation, aiding and abetting, and a hostile work environment, requesting punitive damages. On August 28, 2024, defendants moved for summary judgment arguing plaintiff failed to establish a prima facie case. The trial court granted defendants' motion, dismissing plaintiff's complaint in its entirety, making findings.

Regarding her disability discrimination and failure to accommodate claims, the trial court found plaintiff could not perform the essential functions of her job with or without accommodations she was willing to accept. The court further found the Board's rescission of her accommodation was not tied to her disability, but to the increasing needs of the staff and students for behavioral intervention. Regarding her retaliation claim, the trial court found plaintiff failed to present evidence of unlawful retaliation, as the Board's rescission of her accommodation was, as noted above, legitimate and non-discriminatory. Regarding her hostile work environment theory, the trial court found plaintiff

A-1490-24

failed to present evidence of severe or pervasive action against her to substantiate her claim.

Plaintiff moved for reconsideration. The trial court denied the motion, finding plaintiff failed to present new evidence or present a genuine issue of material fact.

This appeal follows.

II.

A trial court's grant or denial of summary judgment is reviewed de novo, applying the same standard used by the trial court. N.J. Coal. of Auto. Retailers, Inc. v. Ford Motor Co., 261 N.J. 348, 357 (2025). We view the evidence in the light most favorable to the non-moving party to determine whether no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id. at 357-58; Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

We review a trial court's grant or denial of a motion for reconsideration under Rule 4:49-2 for abuse of discretion. Branch, 244 N.J. at 582. Abuse of discretion occurs when the trial court makes its decision "without rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis." Kornbleuth v. Westover, 241 N.J. 289, 300-01 (2020)

A-1490-24

(alterations in original) (quoting U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012)).

III.

A.

First, plaintiff argues the trial court failed to employ the liberal standard of affording all reasonable inferences to the non-moving party at the summary judgment stage for her disability discrimination claim.

"The LAD prohibits employment discrimination on the basis of a disability." Richter v. Oakland Bd. of Educ., 246 N.J. 507, 524 (2021) (quoting Potente v. Cnty. of Hudson, 187 N.J. 103, 110 (2006)). "'Our courts have uniformly held that the [LAD] . . . requires an employer to reasonably accommodate an employee's' disability." Ibid. (second alteration in original) (quoting Royster v. N.J. State Police, 227 N.J. 482, 499 (2017)). To establish a prima facie case for disability discrimination via failure to accommodate the disability, plaintiff must present evidence of each element: (1) he or she qualifies as an individual with a disability or is perceived to have a disability; (2) he or she is qualified to perform the essential functions of the position with or without a reasonable accommodation; and (3) he or she suffered an adverse

9

employment action because of the disability. Victor v. State, 203 N.J. 383, 410, 417 (2010).

The LAD defines "disability" as a

> physical or sensory disability, infirmity, malformation, or disfigurement which is caused by bodily injury, birth defect, or illness including epilepsy and other seizure disorders, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impairment, deafness or hearing impairment, muteness or speech impairment, or physical reliance on a service or guide dog, wheelchair, or other remedial appliance or device, or any mental, psychological, or developmental disability, including autism spectrum disorders, resulting from anatomical, psychological, physiological, or neurological conditions which prevents the typical exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques. Disability shall also mean AIDS or HIV infection.
>
> [N.J.S.A. 10:5-5.]

Our courts have interpreted this definition broadly, finding the disability does not have to be "severe" or "immutable" to benefit from the statute's protections. Royster, 227 N.J. at 499 n.5 (citing Viscik v. Fowler Equip. Co., 173 N.J. 1, 16 (2002)). Given the liberal approach and inclusion of "infirmity" in the statute's definition, along with plaintiff's well-documented existence of respiratory conditions, we easily conclude the record supports the existence of a disability.

10

To satisfy the second element, plaintiff must establish she is able to perform the essential functions of the position with or without accommodation. Victor, 203 N.J. at 410. The record shows that, as a behavioral analyst, plaintiff is required to have frequent interaction with special needs children, including physical intervention during strenuous behavioral episodes. With her accommodation of full remote work, plaintiff was not present in the school to physically intervene in several incidents, requiring the assistance of other staff. Additionally, plaintiff was unable to provide in-the-moment staff coaching or directly apply de-escalation tactics necessary in time-sensitive, crisis situations. The trial court found that "a burden was placed on the school when they attempted to reach [p]laintiff in those situations." The record shows that even with the assistance of additional staff, the school could not fill the gaps in plaintiff's expertise and skill.

The record further shows that after her 2018 diagnosis, but prior to the pandemic, plaintiff was able to perform the essential functions of her job without accommodations. However, after the pandemic started, plaintiff was unwilling to resume in-person work regardless of the alternative accommodations offered by defendants. Plaintiff's conduct supports the conclusion that she was unable

11                                                                                      A-1490-24

or unwilling to perform the essential functions of her job with or without accommodations.

Even if plaintiff was willing to return to in-person learning with the alternative accommodations offered, she fails to present evidence to satisfy the third element of her prima facie case. The record shows that defendants' adverse action rescinding the full remote work accommodation was not caused by plaintiff's disability, but by the need for the school to manage an outbreak of student behavioral incidents in October 2020. Gardella noted this in his email dated November 11, 2020, emphasizing to plaintiff that defendants' decision was not due to plaintiff's skills or professionalism. The record shows plaintiff's subsequent termination in the spring was also unrelated to her disability. On the contrary, defendants offered to facilitate her return to work with several accommodations. It was plaintiff's election to not report to work for over thirty-six days without formally seeking leave which set the predicate for defendants to deem her position abandoned. The record further shows that plaintiff's decision not to report did not take place in a vacuum. There were frequent communications between the parties about the proper process to seek authorized leave, and the risk to plaintiff's employment if she declined to return.

We discern no genuine issue of material fact as to disability discrimination or the failure to accommodate. Plaintiff failed to present proofs to establish her prima facie claim on the second and third elements. Given plaintiff's failure to establish her prima facie case, we need not address the burden-shifting framework outlined in McDonell-Douglas.[1] We affirm the trial court's grant of summary judgment in defendants' favor and dismissal of her disability discrimination claim under the LAD.

B.

We now turn to plaintiff's retaliation claim.

The LAD prohibits retaliation against any person for opposing any unlawful practices or acts, against those who have sought legal advice regarding their rights under the LAD, have filed a complaint, offered to testify or assist with a proceeding under this act, or have aided another in protecting their rights under this act. N.J.S.A. 10:5-12(d). To establish a prima facie retaliation claim, the plaintiff must present evidence of each of its elements: "(1) he or she engaged in a protected activity known by the employer; (2) thereafter their employer unlawfully retaliated against them; and (3) his or her participation in the protected activity caused the retaliation." Rios v. Meadowlands Hosp. Med.

---

[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

13                                                                      A-1490-24

Ctr., 463 N.J. Super. 280, 287 (App. Div. 2020) (quoting Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 125 (2008)).

To satisfy the first element of her retaliation claim, plaintiff must first establish that she engaged in a protected activity that defendants were aware of. Rios, 463 N.J. Super. at 287. N.J.S.A. 10:5-12(d) prohibits retaliation against an employee who "has sought legal advice regarding rights under this act," or has "exercise[d] . . . any right granted or protected by this act."

Plaintiff advocated for her right to receive accommodations for her disability directly and through her attorney through numerous emails and meetings over several months. The LAD explicitly classifies retaining counsel to advocate for health and safety related to her disability, and her advocating for herself in the same way, as a protected activity. Given the communications between defendants, plaintiff, and her counsel, defendants were aware of this protected activity.

Next, plaintiff must present evidence that defendants unlawfully retaliated against her. Rios, 463 N.J. Super. at 287. Similar to the McDonnell-Douglas framework for discrimination, defendants can defeat plaintiff's claim by establishing they had a legitimate, non-discriminatory reason for taking the

adverse action. <u>Woods-Pirozzi v. Nabisco Foods</u>, 290 N.J. Super. 252, 274 (App. Div. 1996).

Our courts have found "that an employee's poor performance in discharging his duties is a legitimate[,] nondiscriminatory reason to fire or demote [an] employee." <u>El-Siouf v. St. Peter's Univ. Hosp.</u>, 382 N.J. Super. 145, 174 (App. Div. 2005). Defendants maintain plaintiff's accommodations were rescinded because she was no longer able to perform the essential functions of her job working remotely. Despite the slew of additional accommodations offered, plaintiff felt they were insufficient to eliminate the risk of contracting the virus and would only consider working in a manner that sacrificed the performance of essential job functions, like physical intervention.

Further, after more than thirty-six days of unauthorized leave and several warnings, defendants deemed plaintiff's position abandoned despite efforts to offer alternative accommodations. Plaintiff did not submit the requisite documentation to qualify for leave until approximately one week after she was terminated.

Affording all reasonable inferences to plaintiff, we are satisfied the trial court correctly concluded defendants' actions in direct response to an increased need for physical intervention and plaintiff's failure to report for work lack

15

discriminatory intent. They align with precedent reflecting the plaintiff's unwillingness to discharge the duties of her job to defendants' reasonable expectations. See Meade v. Twp. of Livingston, 249 N.J. 310, 328 (2021).

We affirm the trial court's grant of summary judgment in defendants' favor and dismissal of her retaliation discrimination claim under the LAD.

C.

We next consider plaintiff's hostile work environment claim.

To establish a hostile work environment claim under the LAD, the plaintiff must show that "the complained-of conduct: (1) would not have occurred but for the employee's [protected status]; and it was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 17 (2017) (emphasis omitted) (quoting Lehmann v. Toys 'R' Us, 132 N.J. 587, 603-04 (1993)). When determining whether the alleged conduct was severe or pervasive, "courts must consider the cumulative effect of the various incidents, bearing in mind 'that each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created may exceed

the sum of the individual episodes.'" Rios v. Meda Pharm, Inc., 247 N.J. 1, 11 (2021) (quoting Lehmann, 132 N.J. at 607).

Here, plaintiff provides no evidence that defendants' actions were severe or pervasive. Plaintiff points to no specific instance or argument as to which, if any, conduct amounted to a hostile work environment. Plaintiff simply argues that the trial court failed to consider the parties' interactions collectively and that a jury should have made this determination. However, the trial court found "[p]laintiff has put forth insufficient evidence of repetitive harassment that pervades the work environment." (citing Lehmann, 132 N.J. at 606-07). The instances presented to the trial court include defendants' conduct through the interactive process, their alleged threatening demands to have plaintiff appear in person, and defendants' filing of an Order to Show Cause during litigation. The trial court found that this "represents nothing more than [] additional effort[s] on [d]efendants' part to work towards a resolution of the matter." More than that, these actions do not align with our case law finding severe or pervasive action.

Viewing the record in its entirety, nothing in it supports severe or pervasive conduct or a hostile environment. Defendants only held plaintiff to the standard articulated in its policies and New Jersey law, such that

accommodations can only be offered to the extent they do not preclude the employee from performing the essential functions of the job and any medical leave must be applied for and approved before its start. The Board's action in rescinding plaintiff's full remote work accommodation and her subsequent termination were both in response to well-documented instances in which plaintiff failed to report to work despite being obligated to do so. No genuine issue of material fact exists to support plaintiff's claim for a hostile work environment. We affirm the trial court's grant of summary judgment in defendants' favor and dismissal of her hostile work environment claim under the LAD.

In finding no wrongdoing on the part of the defendants, plaintiff's claim for aiding and abetting must also fail. See Cicchetti v. Morris Cnty. Sheriff's Off., 194 N.J. 563, 594 (2008).

D.

Finally, we address plaintiff's appeal of the trial court's order denying reconsideration.

"A motion for reconsideration is meant to 'seek review of an order based on the evidence before the court on the initial motion . . . not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record.'"

Triffin v. SHS Grp., LLC, 466 N.J. Super. 460, 466 (App. Div. 2021) (quoting Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008)). Therefore, reconsideration should only be granted when "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence . . . ." Ibid. (alterations in original) (quoting Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996)). "The magnitude of the error cited must be a game-changer for reconsideration to be appropriate." Id. at 466-67 (quoting Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010)).

Here, the trial court denied reconsideration because plaintiff failed to introduce any new or additional evidence, and, viewing the facts in a light most favorable to plaintiff, no genuine issue of material fact existed to preclude summary judgment. The trial court also rejected plaintiff's contention that her ability to perform the essential functions of her job was a jury question, because physical intervention was an essential function of her work. Further, the trial court rejected plaintiff's contention that defendants failed to properly engage in the interactive process, finding they were consistently cooperative. Finally, in

19

reaffirming a lack of wrongdoing on the part of any defendant, the trial court found plaintiff's aiding and abetting claims unwarranted.

In finding that the trial court properly found plaintiff failed to establish a prima facie case for each of her claims, and with no new evidence to consider, plaintiff points to no palpably incorrect or irrational basis to warrant reconsideration. We see no reason to disturb the trial court's denial of reconsideration on these facts.

To the extent we have not specifically addressed any other contentions raised by plaintiff, they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1490-24