SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Delanoy v. Township of Ocean (A-68-19) (084022)**

**Argued November 10, 2020 -- Decided March 9, 2021**

**LaVECCHIA, J., writing for the Court.**

The New Jersey Pregnant Workers Fairness Act (PWFA) affords specific protections in the workplace for pregnant and breastfeeding women. The PWFA amended existing portions of the New Jersey Law Against Discrimination (LAD) by including "pregnancy or breastfeeding" as a protected classification within existing LAD prohibitions or protections presented in many subsections of N.J.S.A. 10:5-12; it also added an entirely new section to that statute, subsection (s), which elaborates on an employer's obligations to a pregnant or breastfeeding employee.

In this appeal, the Court considers the PWFA for the first time. Specifically, the Court considers the Appellate Division's determination that N.J.S.A. 10:5-12(s) creates three distinct statutory causes of action: 1) "unequal" or "unfavorable" treatment of a pregnant or breastfeeding employee; 2) failure to provide a reasonable accommodation to a pregnant or breastfeeding employee (subject to the employer's claim of undue hardship, separately explained in the subsection); and 3) illegal penalization of a pregnant or breastfeeding employee for requesting an accommodation. 462 N.J. Super. 78, 91-92 (App. Div. 2020).

Plaintiff Kathleen Delanoy, a police officer, brought a pregnancy discrimination claim against her employer, the Township of Ocean, alleging in part that the Standing Operating Procedures (SOPs) issued by the then-Chief of Police and the Township's treatment of her violated the LAD as modified by the PWFA.

There were two SOPs that provided an option for light-duty work. The Maternity SOP applied to pregnant officers, and the Light Duty SOP applied to non-pregnant injured officers. Both required a doctor's note recommending light duty, and both required that officers use all their accumulated paid leave time. The SOPs had two important differences. First, under the Maternity SOP, the projected return date had to be "no more than 45 calendar days past the expected due date." Under the Light Duty SOP, the doctor's projected date for the officer's return to full duty would control. Second, under the Light Duty SOP, the police chief had discretion to waive the exhaustion-of-accumulated-leave condition; the Maternity SOP did not have an equivalent provision.

1

Consistent with the Maternity SOP, in September 2014, Delanoy began a light-duty assignment in which she served until she reached the date on which the Township required her to use her available leave time. While serving on light-duty assignment, Delanoy informed her supervisors that her pregnancy prevented her from carrying a gun or defending herself on patrol, and accordingly she was assigned to handle records and work as a "walk-in" officer, responsible for fielding complaints from the public.

Delanoy challenged the Maternity SOP on its face and as applied to her. The trial court granted summary judgment in favor of the Township, finding that the Maternity SOP as applied to Delanoy did not violate the PWFA's "equal treatment" mandate as a matter of law. The Appellate Division reviewed this relatively new legislation, as well as its background and import, vacated the summary judgment ruling, and remanded the matter to the trial court. Id. at 83-84.

The Court granted certification, 241 N.J. 504 (2020), and affirms substantially for the reasons contained in the thoughtful opinion authored by Judge Sabatino. To the extent necessary, the Court provides further exposition on the implementation of this new statutory remedy for pregnant and breastfeeding women seeking fair treatment and reasonable accommodation in order to maintain their position in the workplace.

**HELD:** The Court agrees that the PWFA recognizes for pregnant and breastfeeding employees three distinct causes of action within N.J.S.A. 10:5-12(s): 1) unequal or unfavorable treatment; 2) failure to accommodate; and 3) unlawful penalization. The Court explains the contours of those causes of action and the necessary considerations as to each upon remand.

1. Delanoy's complaint did not specifically identify the three causes of action under the PWFA as distinctly as they are now being argued. Moving forward, the Court instructs plaintiffs -- and their attorneys -- bringing claims under subsection (s) of the PWFA to identify the theories on which their causes of action rely. (pp. 12-13)

2. The Court agrees with the Appellate Division's conclusion that the PWFA includes an "unequal treatment" or "unfavorable treatment" claim for pregnant employees, 462 N.J. Super. at 92-93: that conclusion is rooted in a plain, common-sense application of the terms of subsection (s) and is supported by a contextual analysis, viewing the totality of new language inserted into the LAD by the PWFA, including the insertion of "pregnant or breastfeeding" into other pre-existing protective subsections of N.J.S.A. 10:5-12. (pp. 13-15)

3. Here, the Maternity SOP was facially invalid because it plainly treated pregnant employees differently and less favorably than non-pregnant employees who were similar in their ability or inability to work. The Light Duty SOP provided for a waiver of the accumulated-leave condition, and the Maternity SOP did not. Therefore, on its face, the

2

Maternity SOP constituted a per se violation of the PWFA's prohibition of unfavorable treatment of pregnant employees. The Court accordingly affirms the Appellate Division's reversal of the trial court's denial of partial summary judgment to Delanoy on her facial challenge. Unlike the Appellate Division, however, see id. at 96-98, the Court sees no question that requires resolution, on remand, concerning whether the Maternity SOP was applied in a discriminatory way as to this claim. Implemented according to its very terms, the policy was perforce applied to Delanoy in a discriminatory way by the Township. Thus, with respect to Delanoy's claim of unfavorable treatment, the Court remands for a jury to decide only causation and damages and explains relevant considerations. (pp. 15-16)

4. The Court also agrees that the PWFA includes a reasonable-accommodation claim, but it views that claim in a conceptually different manner than that expressed by the Appellate Division. Rather than relying on case law applying the LAD, which does not specifically address failure to accommodate a disability, see id. at 99-104, the Court focuses on the statutory direction in N.J.S.A. 10:5-12(s), which does specifically address pregnancy accommodation and thus calls for its own analytic structure. (pp. 17-21)

5. Subsection (s) creates a statutory right to reasonable accommodation for currently serving employees who become pregnant and request an accommodation based on a physician's advice; it also permits employers to claim an undue hardship exemption from their statutory obligation to accommodate pregnant employees in the workplace, stating that reasonable accommodation is statutorily required "unless the employer can demonstrate that providing the accommodation would be an undue hardship on the business operations of the employer." The statute accordingly establishes undue hardship as an affirmative defense to a failure-to-accommodate claim as to which the employer carries the burden of proof, including any claims about the employee's ability to perform essential functions of the job. It is not the employee's burden to prove the absence of an undue hardship as part of a prima facie case. (pp. 21-22)

6. The final paragraph of subsection (s) identifies factors to consider when determining whether a proposed accommodation would, in fact, constitute an undue hardship for the employer, including "the extent to which the accommodation would involve waiver of an essential requirement of a job as opposed to a tangential or non-business necessity requirement." That factor acknowledges that a temporary waiver of an essential function does not automatically rise to the level of "undue hardship," but rather is a factor to consider in the totality of the evidence advanced to demonstrate that the accommodation would cause the employer's business operations an undue hardship. If the employer can produce proofs raising a genuine question about the undue hardship of such a temporary accommodation, then the issue is presented to the jury for resolution. The Court notes that the distinctions between subsections (s) and (q) of N.J.S.A. 10:5-12 reinforce this construction of subsection (s). (pp. 22-24)

7.  The Court sets forth its holding as to the elements of and defenses to a reasonable accommodation claim under N.J.S.A. 10:5-12(s) and provides guidance about what the jury must consider.  (pp. 24-26)

8.  Here, the Township has failed to produce any proof to date to sustain its claim that Delanoy cannot perform an essential function of her job, which is the primary factor it argues when claiming an undue hardship.  If the Township on remand does produce support for its assertion that carrying a gun is an essential function of the job, that would not necessarily end Delanoy's claim for reasonable accommodation.  Delanoy's inability to carry a gun would constitute a factor to be considered in determining whether a reasonable accommodation that waived that requirement would constitute an undue hardship on the Township.  The Court remands to the trial court for it to first determine whether the Township will come forward with proof of its claim of undue hardship.  If the Township presents such proof, and if that proof raises a genuine issue on the subject to the trial court's satisfaction, then the trial court should refer the disputed issue of undue hardship to a jury.  (pp. 26-28)

9.  Finally, the Court agrees with the Appellate Division's descriptions of the cause of action for unlawful penalization.  See id. at 104-05.  The Court adds that penalization is plainly identified in subsection (s) as an independent cause of action.  The Legislature meant it to have its own teeth in promoting the public policy in favor of having employers welcome the continuing presence of pregnant and breastfeeding employees in their workplaces.  A viable claim of illegal penalty may arise when conditions of a designated accommodation are made particularly harsh.  Separately, a viable claim of penalty may arise if the pregnant employee's request for an accommodation triggers a hostile work environment against that employee.  All of the contemplated forms of penalty should be considered when a model jury charge is fashioned in this new area.  (pp. 28-29)

10.  Here, Delanoy alleged two possible ways to view the Township's response to her as a penalty:  the accumulated leave condition of the Maternity SOP and her claim that she was unfairly assigned to "walk-in" duty and was otherwise treated detrimentally after requesting an accommodation.  It is for a jury to decide whether either constituted a penalty.  (pp. 29-30)

**AFFIRMED AS MODIFIED.  REMANDED for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion.**

4

SUPREME COURT OF NEW JERSEY

A-68 September Term 2019

084022

Kathleen J. Delanoy,

Plaintiff-Respondent,

v.

Township of Ocean, Andrew Brannen,
Steven Peters, Neil Ingenito, William Larkin,
Christopher Siciliano, W. Michael Evans,
William Garofalo, and Donna Schepiga,

Defendants-Appellants.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
462 N.J. Super. 78 (App. Div. 2020).

| Argued | Decided |
| --- | --- |
| November 10, 2020 | March 9, 2021 |

Lori A. Dvorak argued the cause for appellants (Dvorak &
Associates, attorneys; Lori A. Dvorak, of counsel and on
the briefs, and Marc D. Mory, on the briefs).

Donald F. Burke, Jr., argued the cause for respondent
(Donald F. Burke, on the brief).

Farng-Yi D. Foo, Deputy Attorney General, argued
the cause for amicus curiae Attorney General of New
Jersey (Gurbir S. Grewal, Attorney General, attorney;
Sookie Bae-Park, Assistant Attorney General, of
counsel, and Farng-Yi D. Foo, on the brief).

Jeanne LoCicero argued the cause for amici curiae American Civil Liberties Union, American Civil Liberties Union of New Jersey, A Better Balance, Garden State Equality, Gloucester County NAACP, National Council of Jewish Women, Essex County Section, National Organization for Women of New Jersey, New Jersey Abortion Access Fund, Planned Parenthood Action Fund of New Jersey, Speaking of Birth, Stanton Strong Inc., Women for Progress (American Civil Liberties Union of New Jersey Foundation and American Civil Liberties Union Foundation Women's Rights Project, attorneys; Jeanne LoCicero, Alexander Shalom, and Gillian Thomas, of the New York bar, admitted pro hac vice, on the brief).

Benjamin Folkman argued the cause for amicus curiae New Jersey Association for Justice (Folkman Law Offices, attorneys; Benjamin Folkman, Eve R. Keller, Sarah Slachetka, and Lauren M. Law, on the brief).

Thaddeus P. Mikulski, Jr., submitted a brief on behalf of amicus curiae National Employment Lawyers Association of New Jersey (Thaddeus P. Mikulski, Jr., on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

This appeal presents our first opportunity to consider the New Jersey Pregnant Workers Fairness Act (PWFA), L. 2013, c. 220 -- legislation designed to afford specific protections in the workplace for pregnant and breastfeeding women.

2

Plaintiff Kathleen Delanoy, a police officer, brought this pregnancy discrimination claim under the PWFA against her employer, the Township of Ocean, only to have the action dismissed on a motion for summary judgment. The Appellate Division, in a published opinion that reviewed this relatively new legislation, as well as its background and import, vacated the summary judgment ruling in defendants' favor and remanded the matter to the trial court. Delanoy v. Township of Ocean, 462 N.J. Super. 78, 83-84 (App. Div. 2020).

We agree that Delanoy's claim should not have been dismissed and therefore affirm the Appellate Division's judgment. More importantly, we concur in the Appellate Division's illumination of the PWFA as providing multiple theories on which a claim may be based. In affirming substantially for the reasons contained in the thoughtful opinion authored by Judge Sabatino, we write, to the extent necessary, to provide further exposition on the implementation of this new statutory remedy for pregnant and breastfeeding women seeking fair treatment and reasonable accommodation in order to maintain their position in the workplace.

I.

As the Appellate Division notes, the PWFA amended existing portions of the New Jersey Law Against Discrimination (LAD) by including

3

"pregnancy or breastfeeding" as a protected classification within existing LAD prohibitions or protections, see N.J.S.A. 10:5-12(a), (b), (c), (f), (h), (k), (o) (i), (l), and (m), and added an entirely new section, subsection (s), which elaborates on an employer's obligations to a pregnant or breastfeeding employee, see N.J.S.A. 10:5-12(s). Delanoy, 462 N.J. Super. at 92-94.

As the Appellate Division recounted, the Legislature enacted the PWFA in response to the decision in Young v. United Parcel Service, Inc., 707 F.3d 437, 446 (4th Cir. 2013), which brought national attention to the rights of pregnant workers when the Court of Appeals for the Fourth Circuit held that a pregnant employee was not "disabled" within the meaning of Title VII of the Civil Rights Act of 1964. Although the United States Supreme Court overturned the Fourth Circuit's holding, it "did not adopt the plaintiff's argument that federal law requires employers, absent disparate treatment of pregnant employees, to provide reasonable accommodations that can enable such pregnant workers to continue to work." Delanoy, 462 N.J. Super. at 91 (citing Young v. United Parcel Service, Inc., 575 U.S. 206, 219-20 (2015)). Between the time of the Fourth Circuit's decision and the issuance of the United States Supreme Court's opinion, our Legislature passed the PWFA, which is one of the first and most expansive pieces of new legislation affirmatively protecting pregnant and breastfeeding workers. See id. at 90-91.

4

With that background in mind, the Appellate Division's analysis of the PWFA focused on subsection (s), which provides, in pertinent part, that

> [i]t shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination . . . [f]or an employer to treat, for employment-related purposes, a woman employee that the employer knows, or should know, is affected by pregnancy or breastfeeding in a manner less favorable than the treatment of other persons not affected by pregnancy or breastfeeding but similar in their ability or inability to work.
>
> [N.J.S.A. 10:5-12(s).]

The subsection continues, requiring employers, on request, to provide pregnant workers with reasonable accommodation so they can perform their job functions:

> In addition, an employer of an employee who is a woman affected by pregnancy shall make available to the employee reasonable accommodation in the workplace, such as bathroom breaks, breaks for increased water intake, periodic rest, assistance with manual labor, job restructuring or modified work schedules, and temporary transfers to less strenuous or hazardous work, for needs related to the pregnancy when the employee, based on the advice of her physician, requests the accommodation, and, in the case of an employee breast feeding her infant child, the accommodation shall include reasonable break time each day to the employee and a suitable room or other location with privacy, other than a toilet stall, in close proximity to the work area for the employee to express breast milk for the child, unless the employer can demonstrate that providing the accommodation would be an undue hardship on the business operations of the employer.

5

[Ibid.]

The provision lists its own set of factors to be considered when an employer claims undue hardship if required to provide a pregnant or breastfeeding employee with a reasonable accommodation. Ibid. (factors detailed infra).

Additionally, the subsection prohibits employers from penalizing an employee for requesting or receiving the statutorily required accommodation:

> The employer shall not in any way penalize the employee in terms, conditions or privileges of employment for requesting or using the accommodation. Workplace accommodation provided pursuant to this subsection and paid or unpaid leave provided to an employee affected by pregnancy or breastfeeding shall not be provided in a manner less favorable than accommodations or leave provided to other employees not affected by pregnancy or breastfeeding but similar in their ability or inability to work. This subsection shall not be construed as otherwise increasing or decreasing any employee's rights under law to paid or unpaid leave in connection with pregnancy or breastfeeding.
>
> [Ibid.]

From the above-quoted language in subsection (s), and the Legislature's stated public policy objectives in N.J.S.A. 10:5-3.1, the Appellate Division derived legislative intent to recognize under the PWFA three distinct statutory causes of action: 1) "unequal" or "unfavorable" treatment of a pregnant or breastfeeding employee; 2) failure to provide a reasonable accommodation to a

6

pregnant or breastfeeding employee (subject to the employer's claim of undue hardship, separately explained in the subsection); and 3) illegal penalization of a pregnant or breastfeeding employee for requesting an accommodation. See Delanoy, 462 N.J. Super. at 91-92.

We examine all three identified causes of action and their application in this matter,[1] after briefly recounting the factual and procedural settings that gave rise to this appeal.[2]

II.

Plaintiff Delanoy had served since 2003 as a police officer employed by the Township of Ocean when she filed the instant complaint. She was one of three female police officers in a police force of over fifty officers.

In April 2011, Delanoy informed the then-Chief of Police, Antonio Amodio, that she was pregnant and would be unable to perform her typical assignment. He initially advised Delanoy that the Township did not have a light-duty assignment for pregnant police officers; however, later that year,

---

[1] As this case focuses on a pregnant employee, we hereinafter generally shorten our references when discussing the new law to "pregnant employees." That shortened reference should not be interpreted to exclude breastfeeding employees from the operation of the PWFA as we expand on it in this opinion.

[2] Because the appeal in this matter arose from the award of summary judgment to defendants, the facts as succinctly summarized are presented in a light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

7

Chief Amodio issued two Standard Operating Procedures (SOPs), one for Maternity Assignment and one for Light/Modified Duty.

The two SOPs were substantially similar, with both providing an option for light-duty work. The Maternity SOP applied to pregnant officers, and the Light Duty SOP applied to non-pregnant injured officers. Both SOPs required a doctor's note recommending light duty, and both required that officers use all their accumulated paid leave time as a condition of the light-duty assignment. The date that an officer would have to begin using available leave time was calculated by applying the officer's accumulated leave backwards from the officer's projected return-to-duty date.

The SOPs had two important differences. First, under the Maternity SOP, the projected return date had to be "no more than 45 calendar days past the expected due date." Under the Light Duty SOP, the doctor's note was required to include the projected date for the officer's return to full duty, which would then control. Second, under the Light Duty SOP, the police chief had discretion to waive the exhaustion-of-accumulated-leave condition; the Maternity SOP did not have an equivalent provision.

When deposed during discovery, Delanoy asserted that a male officer had been granted a waiver of the accumulated-leave condition under the Light

Duty SOP. She also certified that another male officer similarly had that condition waived.

On January 22, 2013, Delanoy filed her first lawsuit resulting from the disparate SOPs, naming as defendants Chief Amodio and the Township, and alleging violations of the LAD, N.J.S.A. 10:5-1 to -49, Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 to 12213. Defendants removed that action to federal district court where it was resolved in October 2015.

In 2014, however, Delanoy became pregnant again with an expected (and, as it turned out, actual) due date of March 17, 2015. Anticipating application of the then-existing Maternity SOP, Delanoy filed the present action against the Township of Ocean, the current Chief of Police Steven Peters, retired police captain Neil Ingenito, Mayor William Larkin, and individual Township Council members (collectively, the Township).

Consistent with the practice in place under the Maternity SOP, in September 2014, Delanoy began a light-duty assignment in which she served until she reached the date on which the Township required her to use her

9

available leave time.[3]  While serving on light-duty assignment, Delanoy informed her supervisors that her pregnancy prevented her from carrying a gun or defending herself on patrol, and accordingly she was assigned to handle records and work as a "walk-in" officer, responsible for fielding complaints from the public.

In her September 2014 complaint, Delanoy alleged that the then-existent SOPs and the Township's treatment of her violated the LAD as amended by the PWFA, N.J.S.A. 10:5-12, the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2, and the New Jersey Constitution, N.J. Const. art. I, ¶ 1.  That complaint triggered extensive motion practice, culminating in cross-motions for summary judgment.  The trial court denied Delanoy's motion and granted the Township's motion.  In granting the Township's motion for summary judgment, the court held that the Maternity SOP as applied to Delanoy did not violate the PWFA's "equal treatment" mandate as a matter of law.[4]

---

[3]  Although the record is unclear as to whether that date was February 25 or March 3, 2015, it is clear that Delanoy was required to use some accumulated leave time due to the application of the Maternity SOP to her circumstances.

[4]  In 2016, during the pendency of Delanoy's second suit, Chief Steven Peters issued a new Maternity SOP and a new Light Duty SOP.  The new SOPs are identical to each other:  the 45-day provision in the former Maternity SOP was eliminated, and the discretionary waiver provision of the Light Duty SOP was eliminated.  In response to interrogatories, Chief Peters explained that the

10

Delanoy appealed, and the Appellate Division reversed, holding that under the PWFA, the Maternity SOP was facially invalid because it treated pregnant employees unfavorably as compared to non-pregnant employees subject to the Light Duty SOP; the appellate court directed the trial court on remand to grant Delanoy's request for declaratory and injunctive relief concerning the SOP's validity. Delanoy, 462 N.J. Super. at 83. The Appellate Division left to the trial court other remedial issues related to the claim rooted in the different and less favorable treatment of pregnant women under the Maternity SOP. Ibid.

Further, the Appellate Division vacated the summary judgment granted to defendants on the accommodation claims, finding that "there are genuine issues of material fact for a jury to resolve concerning the reasonableness of the SOP's loss-of-leave-time condition and whether that condition is so harsh as to comprise an impermissible penalty." Id. at 83-84. The court stated that a jury also had to evaluate the employer's claim of undue hardship in accommodating Delanoy as a pregnant police officer. Id. at 84.

---

SOPs were revised "in an effort to address [Delanoy's] concerns regarding the prior SOP's."

11

We granted the Township's petition for certification, 241 N.J. 504 (2020), and we were assisted by numerous amici, who also participated before the Appellate Division.

II.

As noted, the Appellate Division perceived three distinct causes of action within subsection (s):  1) unequal or unfavorable treatment; 2) failure to accommodate; and 3) unlawful penalization.  We will address each, in turn.

However, we note at the outset that Delanoy's complaint did not specifically identify those causes of action as distinctly as they are now being argued.  Moving forward, we instruct plaintiffs -- and their attorneys -- bringing claims under subsection (s) of the PWFA to identify the theories on which their causes of action rely.  Providing that rather minimal level of clarity about the asserted objectionable behavior will facilitate enforcement of the PWFA's goals and promote litigation economy and efficiency when a plaintiff seeks enforcement of a statute, like the PWFA, that contemplates various forms of protected conduct.  At the very least, counsel should provide clarification, ensuring identification of the bases of the action and, consequently, the defenses thereto during pretrial exchanges.  Cf. Chiofalo v. State, 238 N.J. 527, 544 (2019) (identifying a similar preferred practice in

12

CEPA actions to clarify the nature of the statutory or other premise on which a claimed whistleblowing violation is based).

A.

The Appellate Division derived an "unequal treatment" cause of action from the first sentence of subsection (s), which prohibits an employer from treating, "for employment-related purposes, a woman employee that the employer knows, or should know, is affected by pregnancy or breastfeeding in a manner less favorable than the treatment of other persons not affected by pregnancy or breastfeeding but similar in their ability or inability to work." Delanoy, 462 N.J. Super. at 92-93 (quoting N.J.S.A. 10:5-12(s)). After recognizing that claim, the appellate court determined that Delanoy had presented a valid facial challenge to the Maternity SOP but that further fact-finding was needed on the issue of whether Delanoy was treated disparately through the manner in which her modified assignment was implemented. Id. at 96-98. We consider both the Appellate Division's recognition of the claim and the contours of its judgment on that claim.

1.

The Appellate Division's conclusion that the PWFA includes an "unequal treatment" claim for pregnant employees is sensible, rooted as it is in a plain, common-sense application of the terms of subsection (s). See N.J.S.A.

13

1:1-1 ("In the construction of the laws and statutes of this state . . . words and phrases shall . . . be given their generally accepted meaning, according to the approved usage of the language.").

Further indicia about the reach of an unfavorable-treatment claim advanced by a pregnant or breastfeeding employee may also be found from a contextual analysis, viewing the totality of new language inserted into the LAD by the PWFA. See Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018) ("We construe the words of a statute 'in context with related provisions so as to give sense to the legislation as a whole.'" (quoting N. Jersey Media Grp., Inc. v. Township of Lyndhurst, 229 N.J. 541, 570 (2017))).

The prohibition against unfavorable treatment contained in subsection (s) appears to reinforce the import of the insertion of "pregnant or breastfeeding" into other pre-existing protective subsections of N.J.S.A. 10:5-12. Subsection (a), for example, now prohibits refusing to hire or employ; discharging or forcing to retire; or treating discriminatorily in pay or in terms and conditions of employment, an individual based on pregnancy. N.J.S.A. 10:5-12(a).

Traditional principles of statutory construction require courts to give meaning to all words used in a statute, for example, to avoid treating the Legislature's language as mere surplusage. See, e.g., Brugaletta v. Garcia, 234

14

N.J. 225, 248 (2018). Thus, we would not view subsection (s) as preventing only unfavorable workplace treatment that duplicates the prohibited hiring and firing or other discriminatorily impactful actions listed in subsection (a). A meaningful and fair reading of the new language of subsection (s) requires that it be recognized as intended to provide a broader swath of protection against unfavorable treatment of pregnant or breastfeeding employees that may not strictly fall within the other categories of unlawful employment practices listed in subsection (a).

2.

With that perspective in mind, it is apparent that the Maternity SOP applied to Delanoy was facially invalid because it plainly treated pregnant employees differently and less favorably than non-pregnant employees who were similar in their ability or inability to work.[5] The Light Duty SOP provided for a waiver of the accumulated-leave condition, and the Maternity

---

[5] As noted, in 2016, a new Maternity SOP and a new Light Duty SOP were adopted for use in the Township, eliminating the facial differences between the two in force when Delanoy became pregnant with her second child. We express no view on the merits of the subsequently created SOPs. However, the adoption of those latter SOPs does not render moot Delanoy's present challenge. See City of Mesquite v. Aladdin's Castle Inc., 455 U.S. 283, 289 n.10 (1982) ("Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '[the] defendant . . . free to return to his old ways.'" (alteration in original) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953))).

SOP did not. Therefore, on its face, the Maternity SOP constituted a per se violation of the PWFA's prohibition of unfavorable treatment of pregnant employees.

We accordingly affirm the Appellate Division's reversal of the trial court's denial of partial summary judgment to Delanoy on her facial challenge. By enacting a facially unfavorable policy, the Township violated the PWFA, and Delanoy was entitled to partial summary judgment on her request for that declaratory and injunctive relief, as the Appellate Division properly recognized.

Unlike the Appellate Division, however, we see no question that requires resolution, on remand, concerning whether the Maternity SOP was applied in a discriminatory way for purposes of Delanoy's unequal-treatment claim. Implemented according to its very terms, the policy was perforce applied to Delanoy in a discriminatory way by the Township. Thus, with respect to Delanoy's claim of unfavorable treatment, we remand for a jury to decide only causation and damages. That will entail review of the days she was forced to sacrifice at the front and back end of her light-duty assignment under the Maternity SOP. She claims she was forced to use accumulated leave, and to leave early, by reason of the application of the discriminatory Maternity SOP.

16

B.

The Appellate Division also found statutory authority for a reasonable-accommodation claim by an employee under the PWFA. So do we. However, we view the statutory reasonable-accommodation claim under the PWFA in a conceptually different manner than that expressed by the Appellate Division.

1.

In announcing a statutory reasonable-accommodation cause of action for pregnant employees, the Appellate Division derived elements for that PWFA claim from case law that has developed to govern a claim for failure to accommodate a disability under the LAD, stating

> a plaintiff in an LAD disability case alleging an employer's failure to provide reasonable accommodation must establish these elements: "(1) the plaintiff had a disability; (2) the plaintiff was able to perform the essential functions of the job; (3) the employer was aware of the basic need for an accommodation; and (4) the employer failed to provide a reasonable accommodation."
>
> [Delanoy, 462 N.J. Super. at 99 (quoting Royster v. State Police, 227 N.J. 482, 500 (2017)).]

The Appellate Division then held Delanoy met the first three elements and that a factual dispute existed as to the fourth. Id. at 99-104.

Additionally, the Appellate Division recognized a factual dispute as to whether removing the accumulated-leave requirement of the Maternity SOP

17

would constitute an undue hardship for the Township.  Id. at 105-06.  The court noted that the final paragraph of subsection (s) sets forth the factors for consideration when an employer claims undue hardship for subsection (s) purposes.  Ibid.  That paragraph provides:

> For the purposes of this subsection, in determining whether an accommodation would impose undue hardship on the operation of an employer's business, the factors to be considered include:  the overall size of the employer's business with respect to the number of employees, number and type of facilities, and size of budget;  the type of the employer's operations, including the composition and structure of the employer's workforce;  the nature and cost of the accommodation needed, taking into consideration the availability of tax credits, tax deductions, and outside funding;  and the extent to which the accommodation would involve waiver of an essential requirement of a job as opposed to a tangential or non-business necessity requirement.
>
> [N.J.S.A. 10:5-12(s).]

In response to the Appellate Division's incorporation of the case law standard for a disability accommodation claim, the Township advances two arguments before this Court.  First, it maintains that it was not required to provide a reasonable accommodation to Delanoy because she was unable to perform an essential function of the job:  carry and fire a gun.  Thus, the Township contends that Delanoy's claim failed on the proof of the second element for an accommodation claim.  Second, and aligned with the argument

18

that the Township was under no obligation to provide a reasonable accommodation to a pregnant police officer who could not carry out the essential duties of the position, the Township maintains that the Maternity SOP was not an accommodation at all. Pressed, the Township asserts that the Maternity SOP constitutes merely a gratuitous offer to its pregnant employees to perform light-duty work in exchange for exhausting their accumulated leave time.

With respect to that seeming inconsistency in the Township's position about the Maternity SOP, the Appellate Division rejected the "no duty to accommodate" argument[6] and noted that case law had recognized a "conceptual distinction" between "an accommodation that is temporary in nature . . . versus a permanent accommodation." Id. at 100-02 (citing Raspa v. Off. of Sheriff of Gloucester, 191 N.J. 323, 340 (2007)). The court concluded from that case law that a temporary accommodation such as light-duty work

_____

[6] To the extent that the Appellate Division commented on the "loss-of-leave-time policy" as raising a question of the reasonableness of this accommodation for a pregnant worker that the jury should evaluate, see Delanoy, 462 N.J. Super. at 102-04, we disagree for the reasons already expressed when explaining that the Maternity SOP is unequal in treatment and facially invalid.

Further, to the extent that plaintiff raises the separate question of whether an employer's hinging of a pregnancy accommodation on the loss of accumulated leave time constitutes a penalty, which is separately prohibited under subsection (s), we discuss that hereinafter. See infra Section II.C. The penalty issue is one that should be presented to the jury on remand.

19

may be required -- even when the employee cannot perform essential functions of her job -- while a permanent accommodation of similar light work would not.  Ibid.  The Appellate Division then found support for that conclusion in the PWFA, pointing to the reference to "temporary transfers to less strenuous or hazardous work" as an example of a reasonable accommodation for a pregnant employee.  See N.J.S.A. 10:5-12(s).  Accordingly, the Appellate Division held that the statute "contemplates that female workers near the end of their pregnancies may temporarily be unable to perform certain essential physical tasks inherent in their regular jobs, but nonetheless have a right to obtain" an accommodation.  Id. at 101.

2.

Although we agree that plaintiff advanced a viable reasonable accommodation claim against her employer, we root our analysis in the statutory direction of subsection (s), which calls for its own analytic structure.

In our view, the Appellate Division mistakenly viewed the subsection (s) obligation concerning reasonable accommodation as equivalent in approach to all other disability accommodation claims, relying on case law that has over the years incorporated federal principles and developing administrative regulations geared toward the great variety of accommodation claims that arise for persons who are disabled.  Indeed, the elements for disability

20

accommodation have developed with the recognition that "the LAD statute does not specifically address failure to accommodate" a disability. Royster, 227 N.J. at 499. However, as amended by the PWFA, the LAD now does specifically address pregnancy accommodation. Accordingly, we eschew the Appellate Division's approach and hew closely to the precise, procedurally clear, and detailed protections that the Legislature has provided to pregnant and breastfeeding employees under subsection (s).

In the first paragraph of subsection (s), the PWFA makes reasonable accommodation an employer obligation when, for needs related to the pregnancy, an employee, based on the advice of her physician, requests the accommodation. That same paragraph then lists examples of what constitutes a reasonable accommodation, including "temporary transfers to less strenuous or hazardous work," as well as job restructuring. Because subsection (s) is designed specifically for persons who are already employees performing the duties of their job, and who become pregnant and request an accommodation based on a physician's advice, a pregnant employee in such circumstances has a statutory right to reasonable accommodation. N.J.S.A.10:5-12(s).

Subsection (s) does, however, permit employers to claim an undue hardship exemption from their statutory obligation to accommodate pregnant employees in the workplace. N.J.S.A. 10:5-12(s) states that reasonable

21

accommodation is statutorily required "<u>unless the employer can demonstrate</u> that providing the accommodation would be an undue hardship on the business operations of the employer." (emphasis added). The statute accordingly establishes undue hardship as an affirmative defense to a failure-to-accommodate claim. Importantly, absence of undue hardship is not an element of a plaintiff employee's prima facie case; rather, the presence of undue hardship is an affirmative defense as to which the employer carries the burden of proof.

As noted, the final paragraph of subsection (s) identifies the factors to consider when determining whether a proposed accommodation would, in fact, constitute an undue hardship for the employer. The last factor listed is "the extent to which the accommodation would involve waiver of an essential requirement of a job as opposed to a tangential or non-business necessity requirement." <u>Ibid.</u> That factor is rich in meaning. Certainly, it seems to suggest that the waiver of a "tangential or non-business necessity requirement" would not qualify as an undue hardship.

But also implicit in that legislative expression is an acknowledgment that a temporary waiver of an essential function does not automatically rise to the level of "undue hardship." Indeed, the factor calls for an analysis of "the extent to which" an essential requirement might be waived during the

temporary period of the reasonable accommodation. With the burden shifted to the employer for that inquiry, the employer is in the best position to present proof about the size and composition of the employer, its facilities, budget, workforce, and operations. If the employer can produce proofs raising a genuine question about the undue hardship of such a temporary accommodation (i.e., waiver of an essential job function as part of a light-duty assignment) when viewed in that larger context of information, then the issue is presented to the jury for resolution.

That statutory language can be contrasted with language chosen by the Legislature in subsection (q) of N.J.S.A. 10:5-12, which requires employers to reasonably accommodate an employee's sincerely held religious practices and observances, provided the employer cannot demonstrate such an accommodation would constitute an undue hardship. That provision lists a set of factors, distinct from those in subsection (s), for determining whether an accommodation constitutes an undue hardship. N.J.S.A. 10:5-12(q)(3)(b). Absent from those factors in subsection (q) is whether the accommodation would require the employee to forego an essential function of her position. Rather, after listing the factors, subsection (q) provides that "[a]n accommodation shall be considered to constitute an undue hardship if it will

23

result in the inability of an employee to perform the essential functions of the position in which he or she is employed." N.J.S.A. 10:5-12(q)(3)(c).

Subsection (s) must be read in context with the statutory scheme of which it is a part, and that includes subsection (q). See DiProspero v. Penn, 183 N.J. 477, 492 (2005). "We must ascribe to the Legislature a reason for using different language in separate provisions of the same statute." State v. Ferguson, 238 N.J. 78, 102 (2019). In subsection (q), an accommodation automatically constitutes an undue hardship if the employee cannot perform essential functions of her job. See N.J.S.A. 10:5-12(q)(3)(c). Conversely, subsection (s) lists whether the employee can perform an essential function of her job merely as a factor to be considered when assessing an employer's defensive assertion of undue hardship. That difference supports our perception of a legislative intent to make a pregnant employee's temporary inability to perform an essential function of her job merely one factor among many others to assess. Stated otherwise, it supports legislative intent to place comparatively less weight on an employee's temporary inability to perform an essential function of her job in the pregnancy-accommodation context compared to other accommodation claims.

We now hold that a claim for failure to accommodate a pregnant or breastfeeding employee under the PWFA requires the plaintiff to prove three

24

elements: 1) the plaintiff employee must be pregnant or breastfeeding; 2) the plaintiff employee must request reasonable accommodation, as prescribed by subsection (s), so that the employer knows or should know of the plaintiff's need for an accommodation; and 3) the employer must fail to provide a reasonable accommodation. It is the employer's burden to prove, as an affirmative defense, that providing a reasonable accommodation causes an undue hardship. In that regard, if the employer raises an issue concerning the employee's ability to perform an essential function of the job, that must be addressed in the context of the undue hardship affirmative defense. The PWFA's protection of pregnant employees requires that the defendant employer produce proof that the employee cannot fulfill an essential function of her employment and, if so, that her continued employment with the accommodation is an undue hardship for the employer. And, when the defendant satisfies that production-of-proof obligation, then the issue becomes a factual determination for the jury. The jury will consider the contested point about the employee's temporary inability to perform an alleged essential job function as one of several factors to be considered, in their totality, when assessing whether the employer has proved that the nature of the employer's business operations renders it an undue hardship to provide a reasonable

25

accommodation that entails a temporary waiver of an essential function of a job.

In sum, the PWFA may require, in specific circumstances, that an employer provide a reasonable accommodation that entails temporarily permitting a pregnant employee to transfer to work that omits an essential function of her job.

3.

Here, the Township's argument, as it relates to the burden of showing an undue hardship, founders. The Township has failed to produce any proof to date to sustain its claim that Delanoy cannot perform an essential function of her job, which is the primary factor it argues when claiming an undue hardship. Despite asserting a legal requirement that a police officer must wear a gun while on duty, the Township has not pointed to any authority to prove that carrying a gun is an essential function for all police officers. That question went unanswered at oral argument and remains unaddressed.

However, if the Township on remand does produce support for its assertion that carrying a gun is an essential function of the job, that would not necessarily end Delanoy's claim for reasonable accommodation. Delanoy's inability to carry a gun would constitute a factor to be considered in

determining whether a reasonable accommodation that waived that requirement would constitute an undue hardship on the Township.

Delanoy has alleged that, while pregnant, she sought an accommodation for her pregnancy, consistent with her doctor's advice and the PWFA's requirements, and was offered light duty under the Maternity SOP -- a policy we have determined to be facially invalid under the PWFA because it provided unequal treatment to pregnant employees compared to what the Light Duty SOP offered to non-pregnant police officers. Accordingly, Delanoy met the statutory criteria for her failure-to-accommodate claim under subsection (s) of the PWFA. The Township knew or reasonably should have known that Delanoy required an accommodation for her pregnancy and failed to provide that reasonable accommodation. Regardless of whether Delanoy can carry a gun, she has met her burden for a prima facie accommodation claim under subsection (s) of the PWFA.

We remand to the trial court for it to first determine whether the Township will come forward with proof of its claim of undue hardship. The trial court did not address the issue of undue hardship when this matter first came to that court. The court will now have to assess whether and what proof the Township has to advance on its claim of undue hardship. If the Township presents such proof, and if that proof raises a genuine issue on the subject to

27

the trial court's satisfaction, then the trial court should refer the disputed issue of undue hardship to a jury.

## C.

Finally, the Appellate Division held that subsection (s) prohibits "penalizing" a pregnant employee who seeks an accommodation. The Appellate Division interpreted that prohibition to mean that the statute disallows "employer-imposed conditions on accommodations that are especially harsh." Delanoy, 462 N.J. Super. at 104-05 (recognizing retaliatory behavior as also implicitly prohibited as a penalty). The Appellate Division "refer[red] the subject to the Model Civil Jury Charge Committee to develop an appropriate jury instruction on the subject." Id. at 105.

## 1.

We agree with the Appellate Division's descriptions of the cause of action for unlawful penalization. We add the following. Penalization is plainly identified in subsection (s) as an independent cause of action. The Legislature meant it to have its own teeth in promoting the public policy in favor of having employers welcome the continuing presence of pregnant and breastfeeding employees in their workplaces.

Accordingly, in our view, the Attorney General and several amici make sound arguments that a viable claim of illegal penalty may arise when

28

conditions of a designated accommodation are made particularly harsh. Such grudging "compliance" with the will of the Legislature should be deterred, and it would be deterred if recognized to be its own form of an improper penalty. Separately, a viable claim of penalty may arise if the pregnant employee's request for an accommodation triggers a hostile work environment against that employee. We think all of the contemplated forms of penalty should be considered when a model jury charge is fashioned in this new area.

2.

Here, Delanoy alleged two possible ways to view the Township's response to her as a penalty. First, she contends that the accumulated leave condition of the Maternity SOP may constitute an unreasonably harsh condition of accommodation because it forced her to lose accumulated leave in order to secure a light-duty assignment. It is for a jury to decide whether that condition was so harsh as to constitute a penalty.

Second, as noted by the Appellate Division, Delanoy also alleges that she was unfairly assigned to "walk-in" duty and was otherwise treated detrimentally after requesting an accommodation. Delanoy, 462 N.J. Super. at 97-98. As explained earlier, this alleged detrimental treatment was not germane to Delanoy's facial, SOP-based claim of unequal treatment. It is, however, relevant to her claim of penalization. As with the accumulated leave,

29

this second issue must be resolved by a jury on remand, for only it can determine whether the assignment to "walk-in" duty and the other alleged detrimental treatment was for Delanoy a penalty.

## III.

For the reasons expressed, the judgment of the Appellate Division reversing the grant of summary judgment to defendants is affirmed, as modified by this opinion.


CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion.