**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0902-22

IN THE MATTER OF GEORGE
MEADOWS, PATERSON,
DEPARTMENT OF ECONOMIC
DEVELOPMENT.

_____

Submitted September 24, 2024 – Decided October 16, 2024

Before Judges Perez Friscia and Bergman.

On appeal from the New Jersey Civil Service Commission, Docket No. 2021-1955.

O'Toole Scrivo, LLC, attorneys for appellant City of Paterson, Department of Economic Development (Nicole M. DeMuro, of counsel and on the briefs; Kenneth Goodman, on the briefs).

AFSCME New Jersey Council 63, attorneys for respondent George Meadows (Seth Gollin, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent The New Jersey Civil Service Commission (Brian D. Ragunan, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant the City of Paterson, Department of Economic Development (Department), appeals from the September 21, 2022 final administrative action of the New Jersey Civil Service Commission (Commission) reversing the removal of respondent George Meadows from his position as a principal planner. We affirm.

In 2012, Meadows began working as a principal planner for the Department. Meadows received a bachelor's degree for "planning and architecture" from Columbia University. He was responsible for reviewing applications, plans, ordinances, Paterson's master plan, and other land development projects. During his years of service, Meadows received no negative employment reviews.

In 2018, Meadows required eye surgery for glaucoma. His continued blurred vision post-surgery required the use of eyedrops, which partially worsened his condition. He suffered from varying degrees of visual impairment since 2015. Because of his visual limitations, Paterson sent Meadows for a fitness-for-duty evaluation. After the physician's examination, it was determined Meadows needed accommodations to complete his work, but the duration of his impairment was in question. Meadows required accommodations for typing and reading. He had been paying for transportation to and from work.

2

Paterson then placed Meadows on administrative leave, effective September 24, 2018, and required a further fitness-for-duty exam with an ophthalmologist, Saveren Scannapiego, M.D.

Dr. Scannapiego examined Meadows in November and authored a nine-sentence report over a year later in December 2019, concluding Meadows was "unemployable" because of his statutory blindness. Dr. Scannapiego found Meadows's optic nerves were "completely atrophic."

On March 11, 2019, Meadows's treating physician, glaucoma specialist Omar Mobin-Uddin, M.D., opined in a temporary disability return-to-work medical certification that Meadows could perform his work duties, though he had "functional capacity" limitations requiring "accommodation for reading[,] writing[,] and typing clerical work." In September, Dr. Mobin-Uddin issued a report requesting an extension of Meadows's temporary disability stating, "I believe . . . [Meadows] is mentally capable of handling his employment affairs as long as he has accommodations." In March 2020, Dr. Mobin-Uddin issued another report stating Meadows had "[p]rimary [o]pen [a]ngle [g]laucoma." He opined that although Meadows was legally blind, he "may continue to work safely if the job is modified to" accommodate "reading, writing, typing, clerical work[, and] transportation."

A-0902-22

On January 17, Paterson's business administrator notified Meadows he had been suspended due to his inability to fulfill the requirements of a principal planner. On January 21, Paterson issued a Preliminary Notice of Disciplinary Action to Meadows alleging his inability to perform duties pursuant to N.J.A.C. 4A:2-2.3 and seeking his immediate removal. On June 10, Paterson issued Meadows a Final Notice of Disciplinary Action. After Meadows challenged the final notice, the Commission transferred the action to the Office of Administrative Law.

On June 28, 2022, an Administrative Law Judge (ALJ) conducted a hearing during which Michael Deutsch, Paterson's Director of the Division of Zoning and Planning (Division), and Meadows testified. Having worked with Meadows since 2012, Deutsch testified Meadows's work entailed reviewing plans and site visits. Further, because Meadows was legally blind, Deutsch believed he required the assistance of another principal planner to complete the detailed technical work required. He testified Meadows received accommodations but could not recite the specific accommodations provided.

Meadows testified he did not "ask for ambulation," reading, or work transportation assistance. He only "ask[ed] for typing assistance" to perform his work. Meadows advised that reviewing plans and ascertaining the necessary

4

information could be accomplished by asking a clerk about the plan's details. For site visits, he had previously received transportation from other employees working on the projects. He contradicted Deutsch's testimony that many of the civil service job descriptions of a planner applied to him.[1] Meadows believed Paterson used his medical disability as an excuse to terminate him and explained he previously filed an Equal Employment Opportunity complaint in April 2017.

On August 12, 2022, the ALJ issued a thirteen-page initial decision reversing Meadows's removal based on his inability to perform the necessary principal planner duties and reinstating him. The ALJ found Paterson "ha[d] not met its burden of proof to demonstrate that [Meadows] [wa]s unemployable and ha[d] an inability to perform his duties as a [p]rincipal [p]lanner." The ALJ

---

[1] The Commission's job specification, N.J. Civ. Serv. Comm'n, Job Specification: Principal Planner (Mar. 17, 2018), https://info.csc.state.nj.us/jobspec/16491.htm, provides the definition for a principal planner:

> Under direction of a [s]upervising [p]lanner or other supervisor in a State or local government agency, participates in the development of a master, functional, or project plan intended primarily to guide government policy for the assurance of orderly and coordinated development of municipal, county, regional, and metropolitan land areas or portions thereof; supervise staff and work activities; prepares and signs official performance evaluations for subordinate staff; does other related duties as required.

found Paterson relied only on Dr. Scannapiego's letter as he was not produced to testify at the hearing. Further, she found questions arose because Dr. Scannapiego "inexplicably issued [the letter] more than a year after allegedly evaluating Meadows." She afforded no weight to the opinion because Dr. Scannapiego's conclusory report provided no foundation. Specifically, Dr. Scannapiego offered no recitation of "records or information" relied upon in determining Meadows was unemployable.

The ALJ found Meadows testified credibly. She found his job required: writing; public meetings; reviewing documents, ordinances, a master plan, and redevelopment plans; and occasional site visits. Specifically, the ALJ determined "[t]here is no evidence that . . . [Paterson] made any attempt to accommodate Meadows'[s] disability."

After independently evaluating the record, the Commission issued a final administrative action adopting the ALJ's findings of fact and conclusions of law and reinstating Meadows. Further, the Commission ordered Meadows "be granted back pay, benefits, and seniority from the first date of separation until the date of reinstatement."

On appeal, Paterson argues reversal of the Commission's final administrative action is warranted because: the ALJ's decision was based on an

A-0902-22

inaccurate recitation of the factual record; it was not required to provide Meadows an accommodation; and to the extent the record was insufficient for a meaningful review, the matter should be remanded for further proceedings.

Our scope of review of a final administrative action is limited. Bd. of Educ. of Sparta v. M.N., 258 N.J. 333, 342 (2024). An appellate court may only reverse an agency's decision where it finds that the decision is "arbitrary, capricious, or unreasonable or . . . not supported by substantial credible evidence in the record as a whole." Azzaro v. Bd. of Educ. of Trenton, 477 N.J. Super. 427, 436 (App. Div. 2023) (quoting G.D.M. v. Bd. of Educ. of the Ramapo Indian Hills Reg'l High Sch. Dist., 427 N.J. Super. 246, 259-60 (App. Div. 2012)). "While we must defer to the agency's expertise, we need not surrender to it." In re Thomas Orban/Square Props., LLC, 461 N.J. Super. 57, 72 (App. Div. 2019) (quoting N.J. Chapter of Nat'l Ass'n of Indus. & Off. Parks v. N.J. Dep't of Env't Prot., 241 N.J. Super. 145, 165 (App. Div. 1990)). The party challenging the final administrative action has the burden to demonstrate grounds for reversal. Lavezzi v. State, 219 N.J. 163, 171 (2014).

In determining if an agency's action is arbitrary, capricious or unreasonable, we examine "(1) whether the agency's action violates express or implied legislative policies," (2) whether there is substantial evidence in the

record to support the agency's action, and (3) whether in applying the law to the facts, the agency reached a conclusion "that could not reasonably have been made on a showing of the relevant factors." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). We "afford[] a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi, 219 N.J. at 171 (quoting City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Stallworth, 208 N.J. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)). We "'may not substitute [our] own judgment for the agency's even though [we] might have reached a different result.'" In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). An appellate court does not automatically accept an agency's interpretation of a statute or a regulation and reviews legal questions de novo. See Bowser v. Bd. of Trs., Police & Fireman's Ret. Sys., 455 N.J. Super. 165, 170-71 (App. Div. 2018).

Our Supreme Court has recognized "the obligation of employers to reasonably accommodate an employee with a disability." Richter v. Oakland

8

Bd. of Educ., 246 N.J. 507, 530 (2021) (citing N.J.A.C. 13:13-2.5(b)). N.J.A.C. 13:13-2.5(b) provides "[a]n employer must make a reasonable accommodation to the limitations of an employee . . . who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship." Further, "[a]lthough the LAD statute does not specifically address failure to accommodate, 'our courts have uniformly held that the [LAD] nevertheless requires an employer to reasonably accommodate an employee's handicap.'" Royster v. N.J. State Police, 227 N.J. 482, 499 (second alteration in original) (quoting Potente v. County of Hudson, 187 N.J. 103, 110 (2006)). We note under the LAD, reasonable accommodations are "'designed to make certain changes in the work environment or structuring of employees' time that will allow disabled employees to remain at work without their physical handicaps impeding their job performance.'" Caraballo v. Jersey City Police Dep't, 237 N.J. 255, 268 (2019) (quoting Jones v. Aluminum Shapes, Inc., 339 N.J. Super. 412, 426-27 (App. Div. 2001)).

Paterson contends the Commission erred in adopting the ALJ's initial decision because the decision was based on inaccurate factual findings. We are unpersuaded. A review of the record yields the Commission's factual findings are amply supported. Meadows, whose testimony the ALJ deemed credible,

maintained he was able to complete his duties as a principal planner with accommodations, primarily with clerical reading and writing assistance. Further, he asserted he could continue to attend site visits with co-workers when needed.

It is undisputed Paterson, as the appointing authority, was permitted to seek Meadows's termination if there was an "inability to perform duties," N.J.A.C. 4A:2-2.3(a)(3). Paterson, however, bears the burden of proof by a preponderance of the evidence. See N.J.S.A. 11A:2-21; N.J.A.C. 4A:2-1.4(a); In re Polk, 90 N.J. 550, 560 (1982). At the hearing, Paterson relied on Dr. Scannapiego's scant opinion to establish Meadows's inability to fulfill the duties of a principal planner. The Commission's adoption of the ALJ's finding that Dr. Scannapiego rendered a net opinion is well-supported. The nine-sentence report, issued more than one year after Dr. Scannapiego evaluated Meadows, failed to reference the records and documents reviewed, as well as the methods relied upon in formulating the opinion. The net opinion rule requires "experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable.'" Townsend v. Pierre, 221 N.J. 36, 55 (2015) (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). The Commission's decision to

afford no weight to Dr. Scannapiego's cursory opinion is grounded in legal precedent and was not arbitrary, capricious, or unreasonable.

We further observe Paterson produced only one witness to testify—Deutsch. It is undisputed a planner reviews detailed "applications for development." Cox & Koenig, New Jersey Zoning & Land Use Administration § 2-5, at 10 (2024). As referenced in the Commission's job specifications, a principal planner's duties include reviewing land use plans and meeting with the public. Paterson's burden was not simply to establish Meadows's job duties but rather to also prove his inability to perform those duties with reasonable accommodations. See N.J.S.A. 11A:2-21. While Deutsch was familiar with the work requirements and testified Meadows could not perform the job, he conceded to not handling or addressing Meadows's request for accommodations and to being unaware of any accommodations Paterson offered. Thus, as held by the Commission, Deutsch's limited knowledge of the necessary level of accommodations undermined his testimony. Providing the requisite deference and considering the totality of the findings, we discern no error.

Paterson also avers it was not required to provide Meadows an accommodation. Yet, reasonable efforts of accommodation are required. N.J.A.C. 13:13-2.5(b); Richter, 246 N.J. at 530. Paterson specifically argues an

accommodation was not required because Meadows's disability unreasonably required hiring additional staff for the Division to accommodate Meadows. This contention is unsupported. The record lacks sufficient competent evidence to establish Paterson needed to hire an employee to provide Meadows with clerical support or as an additional principal planner. The Commission adopted the ALJ's finding that Paterson did not "sufficiently demonstrate" Meadows required "unreasonable [accommodations] or that Meadows require[d] more extensive accommodations that . . . [Paterson] [wa]s unable to reasonably provide." Further, "no evidence" established "an interactive process was ever initiated" to determine what level of accommodation was needed. We do not find "the agency's decision to be 'arbitrary, capricious, or unreasonable or . . . not supported by substantial credible evidence in the record as a whole.'" In re Ambroise, 258 N.J. 180, 197 (2024) (omission in original) (quoting Stallworth, 208 N.J. at 194). The Commission's final administrative action is amply supported; therefore, we decline to disturb the Commission's determination that Paterson failed to prove it offered or reasonably attempted to provide an accommodation to Meadows.

A-0902-22

Finally, Paterson's request for a remand for further proceedings is without merit.  Again, Paterson had the burden to establish Meadows's removal was warranted.  Any "insufficien[cy] . . . in the record" falls on Paterson.

To the extent not addressed, Paterson's remaining arguments lack sufficient merit to be discussed in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13