**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0156-23

PAULA GUZINSKY,

    Plaintiff-Appellant,

v.

NEW JERSEY DEPARTMENT
OF HUMAN SERVICES,

    Defendant-Respondent.

_____

Submitted February 10, 2025 – Decided April 10, 2025

Before Judges Gummer, Berdote Byrne and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1367-20.

Javerbaum, Wurgaft, Hicks, Kahn, Wikstrom & Sinins, PC, attorneys for appellant (Drake P. Bearden, Jr., on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Eric Intriago, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Paula Guzinksy appeals from a June 7, 2023 order granting the motion of defendant New Jersey Department of Human Services ("DHS") for summary judgment and a September 18, 2023 order denying plaintiff's motion for reconsideration. After plaintiff filed a complaint pursuant to the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -50, alleging disability discrimination, perception-of-disability discrimination, retaliation, and failure to accommodate, her former employer, DHS, moved for summary judgment, which the court granted. On appeal, plaintiff argues the trial court erred in applying the doctrine of judicial estoppel to find she was precluded from pursuing her LAD claim because she had previously stated she was completely disabled in her application for Social Security Disability Insurance ("SSDI"). Additionally, plaintiff contends the trial court erroneously applied the summary-judgment standard and erred in granting defendant's motion.

Plaintiff failed to establish a prima facie case of disability discrimination, and the trial court did not err in granting defendant's motion for summary judgment or in denying plaintiff's motion for reconsideration. We affirm.

A-0156-23

I.

We glean the following facts from the summary-judgment record, "view[ing] the evidence in the light most favorable to the non-moving party." Comprehensive Neurosurgical, PC v. Valley Hosp., 257 N.J. 33, 71 (2024) (alteration in original) (quoting Qian v. Toll Bros., Inc., 223 N.J. 124, 134 (2015)).

In 2011, plaintiff started working as a Human Services Assistant ("HSA") at the Woodbine Development Center of New Jersey ("WDC"), a DHS-operated facility that provides daily living assistance to adults with developmental disabilities. WDC housed the residents it served in "cottages" based on their disability levels and needs. HSAs, such as plaintiff, were assigned to work in the cottages and assist WDC's residents in their activities of daily living. According to plaintiff, her responsibilities as an HSA "included assisting consumers within an assigned cottage with their meals, in attending programs, assisting with laundry, and maintaining [residents'] daily schedules." When her employment with defendant ended, plaintiff was assigned to a cottage housing for residents who did not need wheelchairs and who were "quite self-sufficient."

In July 2017, plaintiff started experiencing back pain, sought medical care, and was advised she would require surgical intervention. She worked without

 A-0156-23

any restrictions until November 2018, when she underwent a surgical procedure to alleviate her back pain and took medical leave as a result. On February 26, 2019, plaintiff was cleared by her doctor to return to "modified work duty." One day later, on February 27, 2019, plaintiff provided a "work status" note to WDC's human resources, which included her doctor's release for her to work "with the restrictions of not lifting, pulling, or pushing more than ten pounds." Plaintiff claims she provided the note to WDC and was told to return on March 1, 2019. According to plaintiff, she returned to work in her assigned cottage on her scheduled return-to-work date and worked from approximately 7:00 a.m. to 1:00 p.m. without incident. That day she was called into her supervisor's office and informed there was no "light duty" available, and she would have to leave.

On March 14, 2019, plaintiff's doctor provided her with a note indicating that she may return to work with modified duties, including no lifting, pushing, or pulling greater than ten pounds pending a Functional Capacity Examination ("FCE"). On March 26, 2019, plaintiff underwent an FCE, which evaluated her ability to lift, push, and pull, and offered recommendations. The report issued following plaintiff's FCE stated she demonstrated ability for "medium category work (occasional lift and work up to [fifty pounds])." The report further indicated plaintiff "demonstrates ability for administrative duties, monitoring

4

consumer vital information/behavior, maneuvering loaded wheelchairs, light housekeeping duties (including folding/putting away laundry), participating with meal delivery/collection, reporting health/maintenance issues, handling loads up to [fifty pounds], etc." In a progress note dated April 4, 2019, plaintiff's doctor indicated he had reviewed plaintiff's FCE results and accordingly recommended a fifty-pound lift restriction.

On April 10, 2019, plaintiff filed a request for reasonable accommodation form with WDC, requesting she not be required to lift, push, or pull greater than fifty pounds. On the same day, plaintiff met with the Americans with Disabilities Act[1] ("ADA") coordinator at WDC. The coordinator noted she had asked plaintiff about other skills and plaintiff told her she had previously worked in an office. She informed plaintiff there were no clerical vacancies at WDC at that time. The coordinator also recorded that she had emailed other supervisors at WDC and various DHS facilities, inquiring about HSA vacancies that could accommodate plaintiff's restrictions. The ADA coordinator was notified there were no vacant positions in or out of a cottage that could accommodate plaintiff's restrictions. A week later, she followed up with the other DHS facilities; however, none of them were able to accommodate the request.

---

[1] 42 U.S.C. §§ 12101-12213.

On April 16, 2019, plaintiff applied for long-term disability benefits through Prudential, defendant's third-party, long-term disability insurer. When asked what prevented plaintiff from returning to work, she responded she was not able to lift more than fifty pounds. During this interview with Prudential, plaintiff indicated her employer had informed her it was not able to accommodate her restriction and had directed her to file a long-term disability claim. When asked if she had plans to return to work, plaintiff stated, "no, my employer cannot accommodate."

On May 2, 2019, plaintiff received a letter from the ADA coordinator stating that, as an HSA, "lifting is considered an essential function of [the] job"; plaintiff may be "require[d] . . . to lift more than fifty pounds on a frequent basis"; and "reduction of the lifting requirement would require job restructuring and/or modification to include the removal of that essential function." The letter explained the ADA does not require an employer to remove an essential function as a reasonable accommodation and denied plaintiff's request for an accommodation. Further, the letter stated that because DHS was unable to approve plaintiff's request for accommodation, her options were to retire or resign. She was advised that if she did not exercise either of those options, she would be terminated from her position. On May 31, 2019, plaintiff's long-term

6

disability claim was approved by Prudential and on June 12, 2019, plaintiff resigned, effective immediately.

On December 5, 2019, plaintiff received a letter from the Social Security Administration ("SSA") reflecting a phone call that had occurred on June 24, 2019, when plaintiff had applied for SSDI. The summary of the call reflected plaintiff's statements that she "became unable to work because of [her] disabling condition on November 9, 2018" and she was "still disabled."

Plaintiff was advised she was being denied SSDI because, based on a review of her health problems, she did not qualify for benefits. Plaintiff filed a request for reconsideration of SSA's denial, stating she disagreed because she remained totally disabled due to her back condition. After she received SSA's second denial of her claim, plaintiff requested a hearing before an administrative law judge to review it. On June 17, 2021, plaintiff received a letter informing her she would start receiving SSDI and subsequently began receiving benefits.

Plaintiff then filed a complaint on July 31, 2020, in which she alleged "disability discrimination, perception of disability discrimination, retaliation, and failure to accommodate" based on the LAD. In response, defendant filed an answer in which it denied plaintiff's disability was a determinative or motivating factor in the decision to terminate plaintiff and all other allegations.

7

During her deposition, plaintiff confirmed the job duties within the New Jersey Department of Human Services Job Demands and Medical Capabilities Form (the "Form") accurately reflected her duties as an HSA. The Form specified that essential job functions included: "pushing and pulling wheelchairs weighing up to 300 pounds; transferring consumers weighing up to 300 pounds; squatting, kneeling, and maneuvering consumers up to 300 pounds to dress them; repositioning consumers who weigh up to 300 pounds; carry[ing] activity items to tables lifting weights up to ten pounds; and assisting in the toileting of [residents] weighing up to 300 pounds."

Pursuant to Rule 4:46-2, defendant moved for summary judgment at the conclusion of discovery, arguing the LAD does not require an employer to waive an essential function of a job in order to accommodate an employee's disability. Defendant also accused plaintiff of claiming in one instance she could have continued to work with an accommodation, while representing in another instance she was unable to work in any capacity for the purposes of securing disability benefits. Defendant relied on the fact plaintiff had failed to demonstrate there was any reasonable accommodation available to her, and she did not seek replacement employment elsewhere. Defendant also claimed plaintiff could not show evidence of DHS having acted with a discriminatory

motive and could not show that she was terminated from her position. Based on these uncontroverted facts, defendant claimed no genuine issue of material fact existed and it was entitled to summary judgment.

In opposition, plaintiff maintained she could have continued to work if the requested accommodations had been made, and at the time of her accommodation request, she was assigned to a cottage where she was not required to lift, push, or pull anything greater than fifty pounds. Plaintiff also denied defendant's statement that lifting, pushing, and pulling over fifty pounds was a requirement of her job and disputed she had sought a waiver of an essential job function.

The trial court granted defendant's motion for summary judgment and dismissed plaintiff's complaint with prejudice. It found plaintiff had failed to demonstrate a prima facie case of disability discrimination and her position was undermined by the insurance and SSDI coverage claims she submitted prior to initiating the complaint, as well as her sworn statements at her deposition. It noted plaintiff had indicated she was "unable to perform any job duties" in her April 16, 2019 application to Prudential, and she was "totally disabled" in her December 5, 2019 SSDI application. The trial court concluded plaintiff was judicially estopped from claiming she was able to perform all essential functions

of her job due to her certification in her application for SSDI benefits. It found "[a]s to the SSDI filings . . . applying judicial estoppel is appropriate"; however, it did not apply the doctrine to the Prudential application because those statements were made in a nonjudicial setting. Finally, the trial court ruled plaintiff had failed to reconcile these inconsistencies throughout the course of discovery and disagreed it was for the jury to decide whether she was capable of working.

On June 26, 2023, plaintiff moved for reconsideration of the June 7, 2023 order granting summary judgment, arguing she was not estopped from proceeding with her LAD claim because she had applied for and received SSDI. The trial court denied the motion, finding the basis of this complaint came down to

> whether or not the plaintiff ha[d] adequately presented an explanation to counter the discrepancy of what she [had] represented to the [SSA] asserting total disability, and whether or not any explanation is sufficient to warrant a reasonable juror concluding that, assuming the truth of the plaintiff's good faith belief in the earlier statement claims she can perform functions of her job with or without reasonable accommodation.

The trial court concluded plaintiff had attempted to have it both ways and a reasonable juror could not conclude plaintiff was able to perform the essential

functions of her job with and without a reasonable accommodation. This appeal followed.

## II.

We review a trial court's grant of a motion for summary judgment de novo and apply "the same standard used by the trial court." Arias v. County of Bergen, 479 N.J. Super. 268, 275 (App. Div. 2024) (quoting Samolyk v. Berthe, 251 N.J. 73, 78 (2022)). Pursuant to Rule 4:46-2(c), a motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits . . . show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." We review a trial court's order on a reconsideration motion under an abuse-of-discretion standard. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

Because plaintiff does not raise her perception-of-disability discrimination, retaliation, or failure to accommodate claims before us, we focus solely on the issue raised on appeal: her disability-discrimination claim. See Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

"Discrimination based on an employee's disability, or perceived disability, is illegal under the LAD." Guzman v. M. Teixeira Int'l, Inc., 476 N.J. Super. 64, 70 (App. Div. 2023); see also N.J.S.A. 10:5-4. To state a prima facie case for disability discrimination pursuant to the LAD, plaintiff must show: (1) she was "disabled within the meaning of the LAD"; (2) "she was actually performing her job, or was able, with or without reasonable accommodation, to perform her job at a level that met [the employer's] legitimate expectations"; (3) she "was discharged"; and (4) her employer "sought someone else to perform the same work after she left." Grande v. Saint Claire's Health Sys., 230 N.J. 1, 24 (2017); see also Smith v. Millville Rescue Squad, 225 N.J. 373, 395 (2016) (describing the elements of a prima facie disability discrimination claim as "(1) that plaintiff is in a protected class; (2) that plaintiff was otherwise qualified and performing the essential functions of the job; (3) that plaintiff was terminated; and (4) that the employer thereafter sought similarly qualified individuals for that job" (quoting Victor v. State, 203 N.J. 383, 409 (2010))).

Prong two of a prima-facie case of disability discrimination is evaluated by an objective standard. Grande, 230 N.J. at 18. "A plaintiff may satisfy the second prong . . . by putting forth evidence either that she was actually performing her job or was able, with or without reasonable accommodation, to

perform her job to her employer's legitimate expectations." Id. at 21. If a plaintiff establishes that prong, "[a]n employer may rebut a plaintiff's reasonable-accommodation showing by providing evidence that the proposed accommodation is unreasonable." Ibid.

"Although the LAD does not explicitly address a reasonable accommodation requirement or claim, 'our courts have uniformly held that the [LAD] nevertheless requires an employer to reasonably accommodate an employee's' disability." Richter v. Oakland Bd. of Educ., 246 N.J. 507, 524 (2021) (alteration in original) (quoting Royster v. N.J. State Police, 227 N.J. 482, 499 (2017)). N.J.A.C. 13:13-2.5(b) provides "[a]n employer must make a reasonable accommodation to the limitations of an employee . . . who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship." Reasonable accommodations are "designed to make certain changes in the work environment or structuring of employees' time that will allow disabled employees to remain at work without their physical [disabilities] impeding their job performance." Caraballo v. Jersey City Police Dep't, 237 N.J. 255, 268 (2019) (quoting Jones v. Aluminum Shapes, Inc., 339 N.J. Super. 412, 426-27 (App. Div. 2001)).

13

A "'reasonable accommodation' refers to the duty of an employer to attempt to accommodate the physical disability of the employee, not to a duty on the part of the employer to acquiesce to the disabled employee's requests." Raspa v. Off. of Sheriff of Gloucester, 191 N.J. 323, 339 (2007) (emphasis omitted) (quoting Jones, 339 N.J. Super. at 426). Therefore, an employer will not be found to have violated the LAD if it terminates "an employee who, after consideration of available reasonable accommodations, nevertheless is no longer able to perform the essential functions of [the employee's] job." Id. at 341.

In considering an accommodation request, an employer should engage in an interactive process with the employee making the request. See Victor, 203 N.J. at 424 ("Engaging in the interactive accommodation process 'does not dictate that any particular concession must be made by the employer . . . [but instead what it] requires is that employers make a good-faith effort to seek accommodations.'" (alterations in original) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 317 (3d Cir. 1999))).

We agree with the trial court's finding that plaintiff failed to establish a prima facie claim of disability discrimination because she could not demonstrate prong two—that she "was performing [her] job at a level that met [her]

employer's legitimate expectations," Grande, 230 N.J. at 18 (alterations in original), or "performing the essential functions of [her] job," Smith, 225 N.J. at 395. The uncontroverted evidence demonstrates plaintiff could not claim she was capable of performing her essential tasks without an accommodation at the time of her resignation due to her numerous recorded statements that she was "totally disabled" as of November 2018. There is no dispute plaintiff did not seek other work after her resignation. The statements plaintiff made while seeking disability benefits contradicted her LAD complaint allegations that she would have been able to work as an HSA with or without accommodations, ultimately preventing her from establishing the second prong of her prima facie claim of disability discrimination.

Viewing the evidence in a light most favorable to plaintiff, she fails to establish a prima facie case of disability discrimination. Plaintiff claimed in her deposition she was always at different cottages throughout her employment with WDC and conceded part of her job responsibilities was to lift over fifty pounds. Additionally, her job included repositioning residents who weighed up to three hundred pounds and assisting in the toileting of residents who may weigh up to three hundred pounds. When asked if she would have been able to help residents with bathing, lifting, and other essential job functions, plaintiff responded she

was unsure. The record demonstrates plaintiff could not perform these essential job functions, with or without an accommodation.

In addition, the record reflects defendant acted in compliance with the LAD by considering whether it could reasonably accommodate plaintiff's request for an accommodation. WDC emailed other DHS facilities, asking if they had any positions that could accommodate plaintiff's lifting restriction, to no avail. Further, WDC inquired internally as to any vacant positions either in or out of the cottages that could accommodate her restrictions. Plaintiff was ultimately advised no cottage could accommodate her request and WDC had no clerical vacancies available. Defendant engaged in the interactive process required by the LAD to determine whether it could accommodate plaintiff pursuant to her request.

We conclude the trial court did not err in granting summary judgment in favor of defendant and finding plaintiff had failed to establish she could perform essential job functions with or without accommodations. The trial court also did not abuse its discretion in denying plaintiff's motion for reconsideration. The record before us demonstrates lifting, pushing, or otherwise maneuvering at least fifty pounds was an essential function of plaintiff's job as an HSA. The record facts show defendant attempted to provide plaintiff her requested

accommodation but was unable to do so, despite a good-faith effort, and engaged in an interactive accommodation process with her. See Victor, 203 N.J. at 424. Engagement in an interactive process and a good-faith effort was all that was required of defendant. Defendant was not required to eliminate an essential function of her role in order to accommodate her. Finally, we note plaintiff could not prove she was terminated as she resigned once she was awarded disability benefits.

To the extent we have not addressed any of plaintiff's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-0156-23